UNITED STATES of America,
Appellant,

v.

Darla June YELLOW
EARRINGS, Appellee.

No. 89–5142.

United States Court of Appeals,
Eighth Circuit.

Submitted Sept. 12, 1989.

Decided Dec. 1, 1989.

David L. Zuercher, Pierre, S.D., for appellant.

David L. Ganje, Aberdeen, S.D., for appellee.

Before JOHN R. GIBSON, Circuit Judge, BRIGHT, Senior Circuit Judge, and WOLLMAN, Circuit Judge.

BRIGHT, Senior Circuit Judge.

The Government appeals the sentence of Darla June Yellow Earrings, alleging the district court[1] erred in departing below the range specified in the United States Sentencing Guidelines. We reject the Government's contentions and affirm.

## I. BACKGROUND

On June 21, 1980, Darla June Yellow Earrings, a member of the Standing Rock Sioux Tribe, drove with three friends to the ranch of Chris Struder on the Standing Rock Reservation. They brought with them a half-pint of whiskey and an unknown quantity of beer. Upon arrival, the group proceeded to socialize with Struder at the ranch. Ultimately, the supply of liquor ran out, so Struder purchased some cases of beer and additional whiskey from a nearby town. The group continued drinking to the point of intoxication, and, as the evening progressed, Struder invited those present to spend the night.

At about 11:15 p.m. Struder withdrew to his bedroom, leaving the rest of the group seated around the kitchen table. Shortly thereafter, Yellow Earrings went to check on Struder, who had a history of becoming "kind of crazy" under the influence of alcohol. Eventually, Struder and Yellow Earrings engaged in kissing and intimate touching on Struder's bed, and Struder asked Yellow Earrings to have intercourse. When Yellow Earrings refused, Struder became verbally abusive and pushed her. He then went to the kitchen doorway and, standing nude, began shouting to Yellow Earrings' friends that she should be removed from the bedroom. Simultaneously, Yellow Earrings brushed past Struder into the kitchen, picked up a nine-inch bread knife sitting out on the counter and returned to the bedroom doorway where Struder still stood naked. Yellow Earrings stabbed Struder in the chest and fled the residence.

The knife punctured Struder's upper chest cavity and lungs, requiring hospitalization and emergency medical care. Struder's condition eventually stabilized, however, and he later recovered completely.

Yellow Earrings entered a plea of guilty to assault resulting in serious bodily injury

1. The Honorable Richard H. Battey, United States District Judge for the District of South Dakota.

under 18 U.S.C. §§ 113(f), 1153 (1982 & Supp. V 1987). The presentence report recommended a sentence of forty-one to fifty-one months, based on an adjusted offense level of twenty-two which included nine enhancement points for inflicting life-threatening injuries with a dangerous weapon. At sentencing, the district court departed from the Sentencing Guidelines and imposed a sentence of fifteen months, followed by a two-year period of supervised release. The court explained its decision to depart as follows:

> In order to fashion a sentence which would prevent some disparity, I will depart. I do take into consideration the fact that the—that this victim in this case did attempt to force himself upon you, and you have a right to, as any person does, to say no, and you did say no. And for that conduct, I compliment your decision. But having said no, you were not entitled to the type of verbal abuse which you received.
>
> . . . .
>
> I do not condone your taking a knife back and striking this victim, but I do understand that these young women, especially young women, any woman, but especially these young women in your community are entitled to—are entitled to attempt in their own way to keep other people's unwanted hands off of them. And it is a difficult problem, not only on—in the community—on the reservation, but in any community in which there is a party and which there's drinking; people congregated in a state of intoxication.
>
> . . . .
>
> The problem of the victim was brought upon, at least in some part, by his own misconduct and his own actions towards you. I do not defend his conduct at all. My sentence indicates that I am not defending your conduct either.

Tr. at 26–28.

The Government appealed the sentence under 18 U.S.C. § 3742(b) (Supp. V 1987),

*as amended by* Anti–Drug Abuse Act of 1988, Pub.L. No. 100–690, tit. VII, §§ 7103(a)(1), (3), (5), 102 Stat. 4181, 4416–17 (1988), asserting that the district court's departure from the Guidelines was (1) based on clearly erroneous factual findings; (2) based on mitigating factors adequately taken into account by the Guidelines; and (3) unreasonable. Under the facts of this case, we discern no error in the district court's exercise of discretion to depart below the Guidelines range.

## II. DISCUSSION

### A. Factual Findings

The Government contests the district court's finding that Struder's injuries resulted, in part, from his own misbehavior. The Government contends the record supports only an interpretation that Yellow Earrings and Struder "engaged in conduct that could be considered consensual sexual foreplay." We cannot agree.

Under the Sentencing Reform Act of 1984, we review findings of fact by a district court under a clearly erroneous standard. *United States v. Justice*, 877 F.2d 664, 670 (8th Cir.), *cert. denied*, — U.S. ——, 110 S.Ct. 375, 107 L.Ed.2d 360 (1989); 18 U.S.C. § 3742(e) (to be codified) (original version at 18 U.S.C. § 3742(d) (Supp. V 1987)).[2] A factual finding is clearly erroneous when, although some evidence may support it, the record as a whole leaves the reviewing court with the definite and firm conviction that a mistake has been committed. *United States v. Gypsum Co.*, 333 U.S. 364, 395, 68 S.Ct. 525, 542, 92 L.Ed. 746 (1948). The record in this case permits no such conclusion.

Numerous sources in the record support the trial court's determination that Struder's conduct substantially provoked the present offense. The presentence investigation states:

> When Darla refused to have intercourse with Studer [sic], he became verbally abusive and pushed her away. In the

---

**2.** The Anti–Drug Abuse Act of 1988 renumbered subsection (d) of 18 U.S.C. § 3742 to subsection (e), as well as inserted an additional clause and made minor modifications in wording. *See* Pub.L. No. 100–690, tit. VII, §§ 7103(a)(6)–(8), 102 Stat. 4181, 4417 (1988).

meantime, the group in the kitchen heard a commotion and the sound of breaking glass. Standing nude, Studer [sic] appeared in the kitchen doorway.

Next, according to defense counsel's arguments during sentencing, "Mr. Studer [sic] came out [sic] screamed at one of Darla's friends to get her out of the bedroom because of the fight they had." Yellow Earrings, in a letter submitted to the court, described the impact of Struder's conduct as follows:

> I didn't want to have sex with him, so he got mad and started to say things to me and he pushed me. I went into the kitchen and grabbed a knife. I don't know why I did that. Thats [sic] what I hate about myself [sic] I do things on impulse and it gets me into trouble. I know [sic] shouldn't have gone back into the bedroom but he was standing there naked saying all kinds of things.

The above evidence demonstrates that Struder, at the very least, pushed Yellow Earrings, verbally abused her and attempted to publicly humiliate her when she refused his request for sexual intercourse. In addition, Yellow Earrings' personal recounting of the incident strongly suggests that had Struder accepted "no" for an answer in a reasonably responsible fashion, his subsequent misfortunes would have never transpired.

Questions of credibility also dictate our deference to the district court's determination in this case. *See* 18 U.S.C. § 3742(e) ("The court of appeals shall give due regard to the opportunity of the district court to judge the credibility of the witnesses. . . . "). In this case, Yellow Earrings not only submitted to questioning by the district court during the sentencing hearing, she also offered three letters for the court's use in sentencing—one describing the events transpiring on the day of the stabbing, one recounting her life experiences preceding this incident and one letter from a tribal elder attesting to her good character. All of this gave the district court substantial opportunity to assess her credibility.

Moreover, at sentencing, the Government neither challenged Yellow Earrings' account nor called witnesses to establish the propriety of Struder's behavior, *see* Fed.R. Crim.P. 32(a)(1) (court must give Government opportunity to comment on matters appropriate to sentencing); United States Sentencing Commission, *Guidelines Manual* § 6A1.3 (Nov. 1989) (court must give parties adequate opportunity to resolve disputed factors), but merely asserted that none of the facts cited by Yellow Earrings warranted departure. Consequently, given the present record, we would be hard-pressed to discern error in the trial court's factual findings.

### B. Mitigating Factors

■ The Government contends that the district court improperly considered victim conduct as a mitigating factor warranting departure. Specifically, the Government contends that the Guidelines permit departure only for wrongful victim conduct and then only to the extent merited by the factors set out in section 5K2.10. According to the Government, Struder's conduct fails to satisfy either criteria. The Government's arguments to this effect border on the frivolous.

Section 5K2.10 of the Sentencing Guidelines specifically authorizes departure under the following circumstances:

*Victim's Conduct* (Policy Statement)

If the victim's wrongful conduct contributed significantly to provoking the offense behavior, the court may reduce the sentence below the guideline range to reflect the nature and circumstances of the offense. In deciding the extent of a sentence reduction, the court should consider:

(a) the size and strength of the victim, or other relevant physical characteristics, in comparison with those of the defendant;

(b) the persistence of the victim's conduct and any efforts by the defendant to prevent confrontation;

(c) the danger reasonably perceived by the defendant, including the victim's reputation for violence;

(d) the danger actually presented to the defendant by the victim; and

(e) any other relevant conduct by the victim that substantially contributed to the danger presented.

As we have already noted, the district judge properly concluded that Struder's misconduct substantially contributed to provoking the offense behavior. Furthermore, the facts surrounding the present incident support a considerable departure under this section. Struder, a rancher and part-time truck driver, stood fully six to eight inches taller than Yellow Earrings and was likely much stronger. Struder's conduct historically became unpredictable around alcohol and, on this occasion, did not stop with merely private abusive words, but also included a physical show of force and public denigration.

Added to this, Struder possessed the advantage of being at his own home where the chances of others confronting his misbehavior were negligible. Significantly, none of those seated in the kitchen ventured to investigate the confrontation brewing in the bedroom, despite the sound of breaking glass. In fact, Struder attempted to rally those present to assist *his* cause. What is more, both the presentence report and statements of counsel indicate that Yellow Earrings had previously suffered physical abuse from an intoxicated relative—thereby increasing the likelihood that she perceived Struder's behavior as threatening.

## C. Reasonableness of Departure

The Government contends that both the direction and extent of the downward departure in this case are unreasonable. We cannot agree.

■ We note at the outset that we are presented with a decision to depart below the specified Guidelines range rather than above. This distinction bears considerable significance in our minds. The Sentencing Reform Act of 1984, which authorized the Sentencing Guidelines, requires courts to impose sentences within the applicable sentencing range unless significant factors not accounted for in the Guidelines warrant departure. 18 U.S.C. § 3553(b) (Supp. V 1987). Any interest the Government may have in sentencing convicted defendants according to the ranges specified in the Guidelines, however, must also be harmonized with the following language in the enabling statute:

**(a) Factors to be considered in imposing a sentence**

The court *shall impose a sentence sufficient, but not greater than necessary,* to comply with the purposes set forth in paragraph (2) of this subsection. The court, in determining the particular sentence to be imposed, shall consider—

. . . .

(2) the need for the sentence imposed—

(A) to reflect the seriousness of the offense, to promote respect for the law, and to provide just punishment for the offense;

(B) to afford adequate deterrence to criminal conduct;

(C) to protect the public from further crimes of the defendant; and

(D) to provide the defendant with needed educational or vocational training, medical care, or other correctional treatment in the most effective manner[.]

18 U.S.C. § 3553(a) (Supp. V 1987) (emphasis added). Therefore, the question of whether to impose a sentence below the Guidelines requires a careful balancing of the respective individual and Government interests implicated in a particular case. What is more, the statute may actually place limits on the Government's interest to a sentence within a specified range when the statutory purposes will be achieved by a lesser deprivation of liberty. Cf. *United States v. Lee,* 887 F.2d 888, 890, 891–893 (8th Cir.1989) (application of Guidelines is unreasonable when Guidelines section fails to make relevant distinctions about offense characteristics).

The highly situation-specific nature of the Guidelines factors suggests that appellate courts should accord great deference to ensuing district court determinations—

both with respect to the threshold decision to impose a sentence below the Guidelines in the first instance, *see United States v. Justice*, 877 F.2d at 666 (manifest abuse of discretion standard applies to district court's decision of whether to depart below the Guidelines), as well as to the district court's determination of the extent of departure warranted, *see United States v. Diaz–Villafane*, 874 F.2d 43, 50 (1st Cir.) ("We will not lightly disturb decisions to depart, or not, or related decisions implicating degrees of departure."), *cert. denied,* —— U.S. ——, 110 S.Ct. 177, 107 L.Ed.2d 133 (1989). *Accord United States v. Rodriguez*, 882 F.2d 1059, 1068 (6th Cir.1989); *United States v. Roberson*, 872 F.2d 597, 601 (5th Cir.), *cert. denied,* —— U.S. ——, 110 S.Ct. 175, 107 L.Ed.2d 131 (1989); *United States v. Correa–Vargas*, 860 F.2d 35, 40 (2d Cir.1988).

■ Having said this, we note that the sentence facing us today would survive even careful scrutiny. We have no trouble concluding that the district court conducted a reasoned downward departure, because the Sentencing Guidelines themselves endorse departure in cases of victim misconduct. U.S.S.G. § 5K2.10. *See also* U.S. S.G. Ch. 1, Pt. A, intro. comment 4(b) (departures may rest on grounds listed under Chapter 5, Part K of Sentencing Guidelines); Wilkins, *Sentencing Reform and Appellate Review*, 46 Wash. & Lee L.Rev. 429, 443 (1989) ("If the Commission expressly has identified an aggravating or mitigating circumstance that it has not adequately taken into account ... then obviously the appellate court need not be as concerned with the reasonableness of the departure decision itself."). Further, we think the sentence imposed here, fifteen months imprisonment followed by a two-year supervised release with treatment provisions for alcohol abuse, adequately addresses the concerns enumerated by Con-

gress in § 3553(a)(2). The sentencing transcript, as well as the sentence itself, reflect that the trial judge imposed sentence with essentially these factors in mind and, in fact, departed to avert a disparity—not to create one. *See* 18 U.S.C. § 3553(a)(6) (Supp. V 1987); *see also United States v. Correa–Vargas*, 860 F.2d at 39–40 (permitting departure to ameliorate disparity caused by initial charging decision).

■ The Guidelines do not entirely overcome, nor completely hamstring, the trial judge's function to make a reasoned downward departure.[3] Moreover, the sentencing decision always rests with the sentencing judge—not with the recommendation of the probation officer who, in preparing the presentence report, may or may not have correctly interpreted the Sentencing Guidelines. *United States v. Jackson*, 46 Crim.L.Rep. (BNA) 1045, 1053 (U.S. Oct. 18, 1989); *see also United States v. White*, 875 F.2d 427, 434 (4th Cir.1989) (district court is not bound by probation officer's characterization of defendant's role in offense).

## III. CONCLUSION

We reject the Government's appeal and affirm the district court's exercise of discretion to depart below the range specified by the Sentencing Guidelines for this offense.

WOLLMAN, Circuit Judge, concurs in the judgment only.

---

**3.** We only discuss here a trial court's authority to depart downward from the Guidelines' sentencing range based on mitigating factors. Accordingly, this opinion does not address whether a similar standard, or a different one, applies to departure upwards. This opinion does not address, as well, whether our review of downward departures might become more stringent

where the United States Sentencing Commission has specifically determined that courts have tended to be too lenient on a particular class of offender, *e.g.,* white collar criminals. *See* Breyer, *The Federal Sentencing Guidelines and the Key Compromises upon Which They Rest*, 17 Hofstra L.Rev. 1, 22–23 (1988).