UNITED STATES of America, Appellee,

v.

**Mareno M. WALOKE, Appellant.**

**No. 91–2493.**

United States Court of Appeals,
Eighth Circuit.

Submitted Dec. 13, 1991.
Decided April 27, 1992.

Ramon Roubideaux, Rapid City, S.D., argued, for appellant.

Mikal Hanson, Asst. U.S. Atty., Pierre, S.D., argued, for appellee.

Before GIBSON, Circuit Judge, FRIEDMAN,* Senior Circuit Judge, and MAGILL, Circuit Judge.

FRIEDMAN, Senior Circuit Judge.

The appellant Mareno M. Waloke challenges his assault convictions in a jury trial on various grounds: The evidence does not support the convictions, the district court improperly admitted certain evidence, and erroneously excluded other evidence, and the court failed to give a necessary jury instruction. He also contends that the district court erroneously applied the Sentencing Guidelines. We reject all of these contentions and affirm the convictions and sentence.

---

* DANIEL M. FRIEDMAN, of the United States Court of Appeals for the Federal Circuit, sitting

I.

After a jury trial in the United States District Court for the District of South Dakota, Waloke, an American Indian, was convicted in two counts of assault with a dangerous weapon and assault resulting in serious bodily injury, in violation of 18 U.S.C. § 113(c) and (f) (1988). The district court (Porter, D.J.) in an opinion denied Waloke's motion to set aside the verdict and enter a judgment of acquittal or for a new trial. The court sentenced Waloke to 57 months imprisonment, followed by three years of supervised release, and a $100 special assessment.

The events that lead to this prosecution and conviction occurred on the night of October 26–27, 1990, in the town of Dupree, South Dakota, on the Cheyenne River Sioux Indian Reservation, giving the district court jurisdiction under 18 U.S.C. § 1153 (1988). Viewing the evidence most favorably to the prosecution and drawing all reasonable inferences that support the verdict, *United States v. Stuart,* 923 F.2d 607, 611 (8th Cir.), *cert. denied,* — U.S. ——, 111 S.Ct. 1599, 113 L.Ed.2d 662 and *sub nom. Hayden v. United States,* — U.S. ——, 112 S.Ct. 145, 116 L.Ed.2d 111 (1991), the jury could have found the following facts:

After drinking among Waloke, his wife Darshane, and her parents, Carlin and Virginia Clown, on the evening of October 26th in Waloke's house, Carlin and Virginia Clown returned to their home and renewed drinking with several of Virginia's friends. Darshane arrived at her parents' house crying and upset. She said that Waloke had tried to hit her and that if Waloke came there, they should tell him that she was not there.

Late in the evening Waloke arrived at the Clown residence and asked for Darshane. Carlin Clown asked Waloke to leave and blocked his access to Darshane, who was in a bedroom trying to avoid Waloke. Waloke got angry and hit Carlin

by designation.

in the face with his fist and knocked him to the floor.

Darshane's brother, Daryl Clown, chased Waloke from the house and, with his father, down the street. Unable to catch him, they returned to the Clown house. Waloke returned to the front of the house and shouted that if Darshane were not sent outside, he would break automobile car windows. When Darshane did not appear, Waloke put a rake through the rear window of the car of one of the guests at the house, and left the area.

Early in the morning on October 27th, Waloke and Darshane met at the house of Wendy Charger, where people were drinking beer. They had an argument. Waloke left the house as requested, and shouted from outside that Darshane should come out. Darshane, who was crying, told people inside the house that she did not want to go because Waloke would hit her for what had happened at her father's house earlier that night.

Narcisse Widow, the victim of the assault, who was in the Charger house during the foregoing events, went outside to talk to Waloke. He was supposedly related to Waloke and hoped to get him to settle down and come inside or to leave without Darshane. Widow and Waloke "exchanged words" outside the house and "were arguing". Waloke struck Widow in the face with the handle of a metal hoe he had in his hand. The blow fractured Widow's cheekbone and eye socket bone, knocked out both upper and lower jaw teeth and created a large laceration from the top of Widow's upper lip to the eye socket. Widow had to undergo reconstructive facial surgery and now suffers permanent disfigurement. He still has pain and numbness.

Waloke then threatened other people at the party with the hoe and then dropped it on the road in front of the Charger house before returning to his home. Another guest at the Charger party later picked up the object Waloke had dropped and threw it across the road in the ditch. This was the location at which police officers later recovered the metal hoe, which was introduced at trial.

The police later came to Waloke's house, where he was hiding from the police and where he surrendered to them. On emerging from the house, he stated: "Go ahead and handcuff me, I did it." During the automobile drive from his house to the police station Waloke made several spontaneous comments to Sergeant Hunger, who was driving the car, including: "I know I am guilty"; "I was at a house, this guy was after me ... wanting to fight and I got tired of it, so I went outside and found something ... I found a pipe and hit this guy in the face with it"; and "I'm guilty."

## II.

### *Sufficiency of the Evidence*

■ Waloke contends that the evidence was insufficient to support the verdict and that the district court therefore erred in denying his motion to set aside the verdict and enter a judgment of acquittal or alternatively to order a new trial. He relies on his testimony and that of his wife that Widow was the aggressor and that, in committing the assault, which he admitted doing, he acted in self-defense.

The jury had ample basis for rejecting Waloke's self-defense claim.

Waloke testified that when he and Widow were inside the Charger house, Widow hit him and knocked him down; that when he "tried to get up" from the floor, Widow kicked him "a few times in the legs"; that after he got up, Widow told him in Indian language, Lakota, that Widow was going "to really teach me a lesson and he was going to make me holler some more"; and that Widow started to take his jacket off. Waloke stated that he "ran out" the door and "found something up against the house and I turned around and I hit Narcisse Widow in the face." He admitted that when he left the house there was "nobody standing or blocking [him]" from "going to [his] home."

Widow testified, however, that prior to the assault, he had not struck, hit or kicked Waloke, that he did not know who at the party would understand Lakota and did not know whether there is a phrase in Lakota

"that loosely translated means I'm going to make you scream or holler" and "wouldn't know how to say it." Two of the other guests at the party testified that they did not see Widow hit or kick Waloke.

Waloke also testified that he had a "big old lump" on the left side of his forehead and "bruises about [his] legs from being kicked." The officers who arrested him, however, did not see any bruises on his face or observe that his clothing (which he also had worn at the Charger house) was torn or roughed up.

Finally, there was the evidence that on his arrest, Waloke had told the police officers "I did it," and that during the ride from Waloke's house to the police station he stated, "this guy was after me ... wanting to fight and I got tired of it, so I went outside and found something ... I found a pipe and hit this guy in the face with it" and "I'm guilty." The jury justifiably could have concluded that if Waloke believed he had acted in self-defense, he would have so told the police.

The evidence thus raised questions of credibility. It was for the jury to resolve these witness credibility issues. *United States v. Marshall,* 922 F.2d 479, 479 (8th Cir.1990), citing *United States v. Big Crow,* 898 F.2d 1326, 1329 (8th Cir.1990). We have no basis for rejecting the jury's determination to accept the testimony of the government's witnesses and reject that of the defendants.

As the district court correctly stated in denying Waloke's post conviction motion to set aside the verdict, "there was sufficient evidence for the jury to conclude the defendant was not acting in self-defense when he struck the victim in the face with a metal garden hoe." Indeed, Waloke's claim that he acted in self-defense was totally undermined by his own testimony that when he ran out of the Charger house, there was no one to prevent him from returning to his own house, but that, instead, he "found something up against the house and I turned around and I hit Narcisse Widow in the face."

## III.

### *Evidentiary Rulings*

■ A. *The Earlier Incident at the Clown House.* Although evidence of a defendant's prior bad acts generally is not admissible, it is admissible when it relates to an "integral part of the immediate context of the crime charged." *United States v. Bass,* 794 F.2d 1305, 1312 (8th Cir.), *cert. denied,* 479 U.S. 869, 107 S.Ct. 233, 93 L.Ed.2d 159 (1986). Evidence of the earlier bad act is admissible when it is "so blended or connected with the one on trial as that proof of one incidentally involves the other; or explains the circumstances thereof." *Bracey v. United States,* 142 F.2d 85, 88 (D.C.Cir.), *cert. denied,* 322 U.S. 762, 64 S.Ct. 1274, 88 L.Ed. 1589 (1944) (footnotes omitted); *United States v. Tate,* 821 F.2d 1328, 1331 (8th Cir.1987), *cert. denied,* 484 U.S. 1011, 108 S.Ct. 712, 98 L.Ed.2d 662 (1988); *United States v. Derring,* 592 F.2d 1003, 1007 (8th Cir.1979).

The prior incident at the Clown House occurred only a few hours earlier on the same night. As the district court explained in rejecting Waloke's challenge to the admission of this evidence:

> The victim and the defendant's wife were both at a party at the Wendy Charger resident. The victim, as well as other witnesses, testified the defendant's wife had stated she was afraid of her husband because of the prior incident at her father-in-law's house. Testimony indicated the defendant was trying to get his wife to leave the party with him; the victim intervened because he had heard of the prior incident and knew the defendant's wife was afraid to leave with the defendant. Defendant then assaulted the victim with the hoe. Evidence concerning the earlier fight explained the circumstances which led to the assault on the victim. In addition, the probative value of this prior incident was not "substantially outweighed by the danger of unfair prejudice."

*See* Fed.R.Evid. 403.

■ B. *Waloke's Admissions to the Police Officer.* Prior to trial, Waloke moved to suppress the admissions he made

to the police officer during the automobile trip from his home to the police station, on the ground that he was in custody, but had not been given *Miranda* warnings. At the suppression hearing, the police officer testified that he did not ask Waloke any questions during the ride and that all of Waloke's statements were spontaneously volunteered. At trial, the officer again testified that he "did not question" Waloke during the ride, and that Waloke's statements were "voluntary." Another person in the car confirmed that testimony.

The district court denied the motion to suppress, ruling that "anything he said" while "being transported promptly to the jail ... [w]as volunteered, not the result of any questioning. And, thus, there was no obligation to give the *Miranda* warning ... in other words, the fact that he volunteers it under those circumstances makes an admission against interest admissible."

■ That ruling was correct. *Miranda* bars only statements made by a defendant in custody that have not been preceded by a proper warning and that are made in response to interrogation. It does not preclude admission of statements that a defendant in custody volunteers and that are not the product of any interrogation by the police. *Rhode Island v. Innis*, 446 U.S. 291, 299–301, 100 S.Ct. 1682, 1688–90, 64 L.Ed.2d 297 (1980).

Waloke also contends that he was drunk when he made the statements and that they, therefore, were not reliable. When Waloke reached the jail, soon after making those statements, within 10 minutes he was given a breath test that showed that his blood alcohol content was, as the district court pointed out in denying the post-trial motion, "less than one-half of the legal intoxication level for driving in South Dakota." Moreover, although Waloke at one point asserted that he had drunk a 12–pack of beer that evening, he testified at the trial that he had only three cans of beer the entire evening.

The district court properly admitted Waloke's admissions made to the police officer enroute from his home to the jail.

■ C. *Admission of the Photograph and the Garden Hoe.* Waloke contends that the district court improperly admitted Exhibit 6, a photograph, and Exhibit 14, a garden hoe that the government contends was the dangerous weapon Waloke used in committing the assault.

Exhibit 6 was a photograph that, in the words of the district court, "showed the doorway where the victim had been attacked as viewed from the interior of the house; it was not admitted to show the condition of the house at the time of the assault but was used to show the residence where the assault occurred." The court ruled that "the picture was not, as the defendant alleges, so gruesome as to 'inflame the jury and excite their emotions.'" It found that "the probative value of the photograph was not substantially outweighed by the danger of unfair prejudice."

Waloke contends that the hoe was improperly admitted because no witness positively identified it as the weapon used to commit the assault. As the district court pointed out, however:

Defendant admitted he hit the victim with some type of a bar. The victim testified he was struck with a garden hoe and that Exhibit 14 was similar to the hoe used in the assault against the victim. In addition, the hoe was found where one of the other witnesses testified that he had thrown it. Although no one could specifically state that it was the hoe which was used in the assault, there was sufficient identification and linkage to the crime scene to support its admission into evidence. *See Durns [v. United States]*, 562 F.2d [542,] 548 [ (8th Cir.), *cert. denied*, 434 U.S. 959, 98 S.Ct. 490, 54 L.Ed.2d 319 (1977) ].

A district court has broad discretion in ruling on admissibility of evidence. *United States v. Foote*, 898 F.2d 659, 665 (8th Cir.), *cert. denied*, —— U.S. ——, 111 S.Ct. 112, 112 L.Ed.2d 81, and *sub nom. Williams v. United States*, —— U.S. ——, 111 S.Ct. 342, 112 L.Ed.2d 307 (1990). The district court did not abuse its discretion in admitting the

photograph (Exhibit 6) and the hoe (Exhibit 14).

**D.** *Refusal to Permit Evidence of Specific Violent Acts by the Victim.* The district court permitted Waloke to offer, in support of his claim of self-defense, evidence regarding Widow's reputation for violence after drinking. Waloke contends that the district court erroneously excluded evidence of specific violent acts by Widow, arguing that because Widow's violent character is an essential element of Waloke's claim of self defense, evidence of Widow's specific violent acts is admissible under Fed.R.Evid. 405(b). As the district court explained in denying the post-trial motion on this issue:

> The Court allowed witnesses to testify as to the victim's reputation for violence but excluded specific acts of violence by the victim. The Court concluded any specific act of violence, unrelated to the case, was barred by Rule 403 as unfairly, prejudicial, confusing, and misleading. As the government notes, the admission of this evidence would have led to "collateral mini trials" where "[t]he defendant would have characterized a collateral incident one way and the government would have found witnesses who would have disputed the claims of defense witnesses."

Fed.R.Evid. 405(b) allows proof of specific instances of conduct "[i]n cases in which character or a trait of character of a person is an essential element of a charge, claim, or defense." *United States v. Barry*, 814 F.2d 1400, 1403 n.6, 1403–04 (9th Cir.1987). The rule makes clear, however, that in such cases, the district court retains authority to exclude the evidence if, for example, under Rule 403, the evidence's "probative value is substantially outweighed by the danger of unfair prejudice, confusion of the issues, or misleading the jury, or by considerations of undue delay, waste of time, or needless presentation of cumulative evidence." *See* Fed.R.Evid. 405(b) (in cases where character of a person is essential element of claim or defense, "proof *may* also be made of specific instances of that person's con-

duct") (emphasis added); *Barry*, 814 F.2d at 1403–04.

The district court thus has discretion to exclude evidence offered under Rule 405(b) if it determines that Rule 403 considerations warrant exclusion. This is precisely what happened here. The district court concluded that the evidence Waloke sought to introduce was "unfairly prejudicial, confusing and misleading," and "would have led to 'collateral mini trials'" in which Waloke and the government would have characterized each incident differently. As noted above, the district court has wide discretion in determining the admissibility of evidence; its decision to exclude evidence of specific instances of Widow's conduct, but to permit evidence regarding Widow's reputation for violence after drinking, was a permissible exercise of that discretion. *See U.S. v. Weddell*, 890 F.2d 106, 107 (8th Cir.1989).

### IV.

*The Instructions on Self–Defense*

**** In Instruction 23, the court charged the jury as follows regarding the law of self-defense:

> If a person reasonably believes that force is necessary to protect himself from what he reasonably believes to be unlawful physical harm about to be inflicted by another and uses such force, then he acted in self defense.
>
> However, self defense, which involves using force likely to cause death or great bodily harm, is justified only if the person reasonably believes that such force is necessary to protect himself from what he reasonably believes to be a substantial risk of death or great bodily harm.
>
> For you to find the defendant guilty of any of the offenses charged, the government must prove beyond a reasonable doubt that the defendant was not acting in self defense.

Waloke contends that the district court erred in not giving this court's Model Jury Instruction No. 3.09 on Self–Defense. He relies on *United States v. Norton*, 846 F.2d 521 (8th Cir.1988), as establishing that fail-

ure to instruct the jury, as set forth in Model Instruction 3.09, was reversible error.

*Norton* stated that "[t]he Model Instructions, however, are not binding on the district courts of this circuit, but are merely helpful suggestions to assist the district courts." *Id.* at 525. The failure to follow what the court described as "the better practice" does not make such failure reversible error. Indeed, in *Norton* itself, the court upheld the conviction despite the failure to give the Model Instruction.

Moreover, the third paragraph of Instruction 23 gave the jury the same direction as Model Instruction 3.09 would have provided: That the burden was on the government to prove "beyond a reasonable doubt that the defendant was not acting in self defense." The only difference is that in the Model Instruction, the self-defense charge is included in the instruction explaining the elements of the offense. As the district court correctly pointed out in denying the post-trial motion,

> it gave a separate instruction which clearly placed the burden on the government to show the defendant did not act in self-defense. The Court concludes the failure to repeat this instruction in the element instructions does not rise to the level of constitutional error as asserted by the defendant.

### V.

### *Application of the Sentencing Guidelines*

Waloke contends that the district court committed three errors under the Sentencing Guidelines in determining his sentence. His contentions are unpersuasive.

 A. Waloke argues that the district court improperly added two points to his criminal history based on a state court conviction and sentence for the felony of possession of a controlled weapon. He relies on the statement in Guidelines Section 4A1.2(a)(3) that: "A conviction for which the imposition or execution of sentence was totally suspended or stayed shall be counted as a prior sentence under § 4A1.1(c)."

Under this provision, a defendant receives a one point reduction in his criminal history for such sentence. Guidelines § 4A1.1(c).

The judgment in the state case shows that Waloke was sentenced to 90 days imprisonment and fined $150, and that he was "remanded to the Sheriff to be incarcerated in jail." His sentence was not "totally suspended or stayed," as Guidelines § 4A1.2(a)(3) specifies, and he, therefore, was not entitled to a one point reduction in his criminal history.

 B. Waloke next contends that the district court erred in not departing downward from the Guideline range under § 5K2.10, which provides: "If the victim's wrongful conduct contributed significantly to provoking the offense behavior, the court may reduce the sentence below the guideline range to reflect the nature and circumstances of the offense." He relies on *United States v. Yellow Earrings*, 891 F.2d 650 (8th Cir.1989).

In *Yellow Earrings*, we affirmed the district court's downward departure from the Guidelines under § 5K2.10, based on that court's conclusion that the victim's "misconduct substantially contributed to provoking the offense behavior [stabbing]." *Id.* at 654. We held that the district court's finding that the victim's conduct "substantially provoked" the assault, *id.* at 652, was not clearly erroneous. We pointed out that "appellate courts should accord great deference to ensuing district court determinations—both with respect to the threshold decision to impose a sentence below the Guidelines in the first instance ... as well as the district court's determination of the extent of departure warranted." *Id.* at 654–55 (citations omitted).

In the present case, unlike *Yellow Earrings*, the evidence did not establish that Widow's misconduct, if there was any, substantially provoked or led to Waloke's assault. The district court implicitly determined that the evidence did not support Waloke's contention. That finding, resting as it did on the court's credibility determinations, *see Yellow Earrings*, 891 F.2d at 652, is not clearly erroneous. The Guide-

line states that the district court "may" reduce the sentence; the district court has broad discretion whether to do so. *Id.* at 655. The district court did not abuse its· discretion in refusing a downward departure from the Guidelines based on the victim's alleged misconduct that "contributed significantly to provoking the offense."

■ C. Finally, Waloke argues that he should have received a two point downward departure under Guidelines § 3E1.1(a) for acceptance of responsibility. That provision· mandates such a downward departure "[i]f the defendant clearly demonstrates a recognition and affirmative acceptance of personal responsibility for his criminal conduct." Waloke asserts that his admission that he assaulted Widow constituted an acceptance of responsibility that entitled him to a downward departure.

The "acceptance of responsibility" that § 3E1.1(a) addresses, however, is "acceptance of personal responsibility for his criminal conduct." Throughout this proceeding, including this appeal, Waloke has contended that he is not criminally responsible at all, because he committed the assault in self-defense. He never has admitted his guilt or "demonstrate[d] ... sincere remorse" for his conduct. *United States v. Knight,* ·905 F.2d 189, 192 (8th Cir.1990). Despite the jury's rejection of his self-defense claim, he continues to press it on appeal. The district court did not abuse its discretion in refusing a downward departure based on Waloke's alleged acceptance of responsibility. *See United States v. Hoelscher,* 914 F.2d 1527, 1537 (8th Cir. 1990), *cert. denied sub nom. Giuffrida v. United States,* — U.S. —, 111 S.Ct. 971, 112 L.Ed.2d 1057 and *Meriwether v. United States,* — U.S. —, 111 S.Ct. 2240, 114 L.Ed.2d 482 (1991); *United States v. Evidente,* 894 F.2d 1000, 1002–03 (8th Cir. 1990).

The conviction and sentence are affirmed.