<head>

<title>USCA1 Opinion</title>

<style type="text/css" media="screen, projection, print">

<!--

@import url(/css/dflt_styles.css);

-->

</style>

</head>

<body>

                United States Court of Appeals
                    For the First Circuit

No. 98-1831

                         UNITED STATES,

                           Appellee,

                               v.

                          JESUS BELLO,

                     Defendant, Appellant.

          APPEAL FROM THE UNITED STATES DISTRICT COURT

                FOR THE DISTRICT OF PUERTO RICO

       [Hon. Daniel R. Dominguez, U.S. District Judge]

                             Before

           Selya, Boudin, and Lipez, Circuit Judges.
                                
                                
                                
                                
    Edgardo Rodrguez-Quilichini, Assistant Federal Public
Defender, with whom Joseph C. Laws, Jr., Federal Public Defender,
was on brief for appellant.
    Desire Laborde-Sanfiorenzo, Assistant United States Attorney,
with whom Guillermo Gil, United States Attorney, Jorge E. Vega-
Pacheco and Camille Vlez-Riv, Assistant United States Attorneys,
were on brief for appellee.

October 19, 1999

                                
                                
 LIPEZ, Circuit Judge.  Jess Bello appeals his conviction
and sentence for assaulting a fellow prisoner in the Metropolitan
Detention Center in Guaynabo, Puerto Rico ("MDC-Guaynabo") in
violation of 18 U.S.C.  113(a)(6).  Bello claims that the court
erred in taking judicial notice of the jurisdictional element of
the offense, namely, that MDC-Guaynabo was within the territorial
jurisdiction of the United States.  He also claims that the court
erred in refusing to instruct the jury on his defenses of self-
defense and duress, and in telling the jurors outside of the
presence of counsel, in response to a jury inquiry, that self-
defense was not applicable in this case.  In challenging his
sentence, he claims that the court mistakenly believed that it
lacked the legal authority to grant a downward departure on grounds
of coercion or duress, and that the court erred in refusing to
grant a reduction in offense level for acceptance of
responsibility.  We affirm.
                              I.
Factual background
 At the time of the events in question, Bello was a
prisoner confined at MDC-Guaynabo where he worked as a food service
orderly, serving food to other prisoners.  In this capacity, he was
responsible for ensuring that food was distributed to all inmates.
The victim of Bello's assault, Domingo Santana-Rosa, was also a
prisoner in MDC-Guaynabo.  Bello testified that Santana frequently
sneaked into the food service line and requested seconds even when
all other prisoners had not yet eaten.  According to Bello, at
around 5:00 PM on July 23, 1996, he refused to serve Santana a
second helping at dinner because five other inmates had yet to eat.  
Santana then told Bello that he and another inmate were "going to
crack open [Bello's] head."  After making the threat, Santana sat
down with several other inmates, including one "Porra."  Porra
later advised Bello that Santana planned to attack him while Bello
was working out in the recreational yard of the prison.  Bello
testified that he did not report the threat to prison authorities
because he feared the repercussions of being labeled a "snitch" by
his peers.
 On July 25, 1996, at around 11:30 AM, Santana was playing
dominoes with other inmates in the recreational yard.  Bello
noticed Santana's presence, and he became alarmed when he further
noticed that the table for playing dominoes, which was ordinarily
in the prison's game room, had been moved into the yard where it
now stood only a few feet away from where Bello intended to
exercise.  Bello grabbed a push broom from the corner of the yard
and hit the wall of the yard with its handle, stating that it was
a good stick for playing baseball.  At that point Santana first
noticed Bello's presence in the yard, but he continued playing
dominoes.  Bello removed the handle from the push broom and kept
the head.  He walked towards Santana and, once behind him, Bello
hit him in the back of the head with the push broom head.  Santana
collapsed, unconscious, and was taken to the hospital where he was
operated on to relieve an epidural hematoma (a blood clot under the
skull).  Santana survived and regained consciousness six days
later.  The entire incident was captured on videotape.
 Bello was indicted on one count of assault within the
jurisdiction of the United States (as defined in 18 U.S.C.  7(3)),
in violation of 18 U.S.C.  113(a)(6).  Pursuant to Fed. R. Evid.
201 ("Rule 201"), the government filed a pretrial motion requesting
that the court take judicial notice that MDC-Guaynabo is located
within Fort Buchanan, a military base on lands "reserved or
acquired for the use of the United States, and under the exclusive
or concurrent jurisdiction thereof," and thus is within the
"special maritime or territorial jurisdiction of the United
States."  The pretrial motion was accompanied by documentation
tending to prove the requisite elements.  The court deferred making
a ruling on the motion until trial.  
 At trial, the government presented before the jury the
testimony of Alma Lpez, the legal advisor to the warden of MDC-
Guaynabo, who stated that the land on which the prison was located
was owned by the federal Bureau of Prisons and was formerly part of
Fort Buchanan, but was transferred to the Bureau by the Department
of Defense.  After cross-examining Lpez, defense counsel objected
to the court taking judicial notice of the fact that MDC Guaynabo
is under the exclusive jurisdiction of the United States.  Because
Lpez was not in a position to authenticate the documentation
submitted with the pretrial motion, the documents were not admitted
into evidence.  However, the court examined the documents outside
the presence of the jury and concluded that it could take judicial
notice (based on both the testimony in evidence and the documents)
that the MDC-Guaynabo facility was within the jurisdiction of the
United States.  The court announced to the jury that it was taking
judicial notice of this jurisdictional fact, but informed them that
they were "not required to accept as conclusive any fact that the
Court has judicially noticed."  The jury was similarly instructed
before it retired to deliberate.   
 The court denied Bello's request to instruct the jury on
his defenses of duress and self-defense, ruling that there were no
facts which justified such instructions.  During deliberations, the
jury requested clarification on the meaning of self-defense.  The
court responded by informing the jurors that self-defense was not
applicable to this case.  The jury found Bello guilty of assault.  
 The court subsequently denied an oral motion by Bello to
set aside the verdict on the ground that there was insufficient
proof of the jurisdictional element of which the court took
judicial notice.  Bello then filed a motion for a new trial,
arguing that the court erred in failing to instruct on self-
defense. The court denied the motion.
 Bello was subsequently sentenced to a term of
imprisonment of 120 months, 60 months of which was to be served
concurrently with the remainder of a previous federal criminal
sentence.  A supervised release term of 3 years and a special
monetary assessment of $100 were also imposed.  This appeal ensued.
                             II.
Judicial notice
 Bello argues that the court improperly took judicial
notice that the assault occurred "within the special maritime and
territorial jurisdiction of the United States."  In so doing, the
Court took judicial notice of an element of the offense for which
Bello was convicted.  That fact lends particular significance to
the judicial notice issue.  
 Since the government petitioned, and the trial court
ruled, pursuant to Rule 201, we address the conformity of the
court's judicial notice determination with that rule.  Rule 201
provides in relevant part:
   (a) Scope of rule. This rule governs only
 judicial notice of adjudicative facts.
   (b) Kinds of facts. A judicially noticed fact
 must be one not subject to reasonable dispute
 in that it is either (1) generally known
 within the territorial jurisdiction of the
 trial court or (2) capable of accurate and
 ready determination by resort to sources whose
 accuracy cannot reasonably be questioned.
 . . . .
   (g) Instructing jury. In a civil action or
 proceeding, the court shall instruct the jury
 to accept as conclusive any fact judicially
 noticed. In a criminal case, the court shall
 instruct the jury that it may, but is not
 required to, accept as conclusive any fact
 judicially noticed.

Fed. R. Evid. 201.  By its terms, Rule 201 applies only to
adjudicative facts, and the parties and the court assumed that the
jurisdictional element at issue here involved an adjudicative
rather than a legislative fact.  They assumed correctly. Whether a
fact is adjudicative or legislative depends not on the nature of
the fact   e.g., who owns the land   but rather on the use made of
it (i.e., whether it is a fact germane to what happened in the case
or a fact useful in formulating common law policy or interpreting
a statute) and the same fact can play either role depending on
context.  See Fed.R.Evid. 201, Advisory Committee's note
("Adjudicative facts are simply the facts of the particular case.  
Legislative facts, on the other hand, are those which have
relevance to legal reasoning and the lawmaking process . . . .").
Where the prison sits is an element of the offense and
unquestionably an adjudicative fact, and we review the trial
court's decision to take judicial notice under Rule 201 for abuse
of discretion.  See United States v. Chapel, 41 F.3d 1338, 1342
(9th Cir. 1994); see also Taylor v. Charter Medical Corp., 162 F.3d
827, 829 (5th Cir. 1998) (applying abuse of discretion standard to
refusal to take judicial notice).

 MDC-Guaynabo's location within the jurisdiction of the
United States is the "kind of fact" judicially recognizable under
Rule 201(b).  To qualify for judicial notice, a fact "must be one
not subject to dispute in that it is either (1) generally known
within the territorial jurisdiction of the trial court or (2)
capable of accurate and ready determination by resort to sources
whose accuracy cannot reasonably be questioned."  The Advisory
Committee's note to Rule 201 explains:
   The usual method of establishing adjudicative
 facts is through the introduction of evidence,
 ordinarily consisting of testimony of the
 witnesses.  If particular facts are outside
 the area of reasonable controversy, this
 process is dispensed with as unnecessary.  A
 high degree of indisputability is an essential
 prerequisite.

Rule 201, Advisory Committee's note (emphasis provided).    
 The trial court based judicial notice on both prongs of
Rule 201(b), finding that MDC-Guaynabo's presence within the
jurisdiction of the United States is of such common knowledge and
can be so accurately and readily determined that it cannot
reasonably be disputed.  By "generally known" Rule 201(b)(1) "must
refer to facts which exist in the unaided memory of the populace;
if the fact is one that a reasonable person would not know from
memory but would know where to find, it falls within subdivision
(2)," not (1).  21 Wright & Graham, Federal Practice and Procedure
5105, at 407 (1977).  Although the label "federal penitentiary"
might suggest to the average person that MDC-Guaynabo is under the
jurisdiction of the United States, it is unlikely that the
"reasonable person" has any familiarity with MDC-Guaynabo at all,
let alone its jurisdictional status.  Hence, Rule 201(b)(1) cannot
supply a basis for judicially noticing the jurisdictional fact in
this case.  
 However, judicial notice was proper pursuant to Rule
201(b)(2), based on "sources whose accuracy cannot reasonably be
questioned."  Indeed, "[g]eography has long been peculiarly
susceptible to judicial notice for the obvious reason that
geographic locations are facts which are not generally
controversial and thus it is within the general definition
contained in Fed.R.Evid. 201(b) . . . ."  United States v. Piggie,
622 F.2d 468, 488 (10th Cir. 1980); see also United States v.
Blunt, 558 F.2d 1245, 1247 (6th Cir. 1977). Moreover, "official
government maps have long been held proper subjects of judicial
notice."  Government of Canal Zone v. Burjan, 596 F.2d 690, 694
(5th Cir. 1979).  The government submitted to the court official
government maps, letters from Army officials, and various
legislative acts of Puerto Rico, all tending to show that MDC-
Guaynabo was within the jurisdiction of the United States.  
Although the defense cross-examined Lpez, the legal advisor to the
warden of MDC-Guaynabo, suggesting some "dispute" over Lpez's
testimony, it is clear from the record that the trial court based
its decision to take judicial notice largely on the maps and other
documents submitted by the government whose accuracy was not
questioned by the defense.  To be sure, the trial court's decision
to judicially recognize a fact upon which testimony had already
been presented and subjected to cross-examination before the jury
was unusual.  Nonetheless, the existence of independent and
undisputed documentary evidence in the form of government maps,
official letters, and public laws provided a sufficient basis for
judicial notice under Rule 201(b)(2), irrespective of Lpez's
testimony.   
 Concluding that the trial court properly exercised its
discretion in taking judicial notice of the jurisdictional fact, we
must decide next whether the trial court correctly adhered to Rule
201's procedures for instructing the jury.  Rule 201(g) provides
that: "In a civil action or proceeding, the court shall instruct
the jury to accept as conclusive any fact judicially noticed. In a
criminal case, the court shall instruct the jury that it may, but
is not required to, accept as conclusive any fact judicially
noticed." Fed. R. Evid. 201(g). "Congress intended to . . . create
one kind of judicial notice for criminal cases and another for
civil cases." 21 Wright & Graham, Federal Practice and Procedure
5111, at 274 (1999 Supp.). "In a criminal case, Rule 201(g)
treats judicial notice like a presumption; it relieves one party of
the need to produce evidence but does not prevent the other party
from contesting" the noticed fact with evidence and argument to the
jury." Id. at 534.
 The instruction offered by the court was as follows:
   Even though no evidence has been introduced
 about it in your presence,[] I believe that
 the fact that the Metropolitan Detention
 Center is within a land reserved for the use
 of the United States and under its exclusive
 jurisdiction . . . is of such common knowledge
 and can be so accurately and readily
 determined from the Metropolitan Detention
 Center officials that it cannot reasonably be
 disputed. You may, therefore, reasonably treat
 this fact as proven even though no evidence
 has been presented on this point before you.
     As with any fact presented in the case,
 however, the final decision whether or not to
 accept it is for you to make and you are not
 required to agree with me.

This instruction was based on a nearly identical instruction from
the Eighth Circuit, Model Crim. Jury Instr. 8th Cir.  2.04 (1989);
see also 1 Weinstein's Federal Evidence  201.34[3] (1999) (quoting
Federal Judicial Center Pattern Criminal Jury Instructions, no.7
(commentary), which is itself based on one of the few opinions
treating the application of Rule 201(g), United States v. Deckard,
816 F.2d 426, 428 (8th Cir. 1987)). As in Deckard, "[h]ere the
trial court meticulously followed the command of Rule 201(g). After
having instructed the jury generally on presumption of innocence
and burden of proof," 816 F.2d at 428, the court issued an
instruction that complied entirely with the dictates of the rule.  
 Of course, compliance with Rule 201 does not establish
that application of Rule 201 in this case was constitutional.  The
Sixth Amendment of the Constitution guarantees to a criminal
defendant the opportunity for a jury to decide guilt or innocence.  
See Duncan v. Louisiana, 391 U.S. 145, 149 (1968).  "A necessary
corollary is the right to have one's guilt determined only upon
proof beyond the jury's reasonable doubt of every fact necessary to
constitute a charged crime." United States v. Mentz, 840 F.2d 315,
319 (6th Cir. 1988); see also Moore v. United States, 429 U.S. 20,
22 (1976) (per curiam).  "[A] judge may not direct a verdict of
guilty no matter how conclusive the evidence." United Bhd. of
Carpenters and Joiners v. United States, 330 U.S. 395, 408 (1947);
see also  United States v. Argentine, 814 F.2d 783, 788 (1st Cir.
1987). "A plea of not guilty places all issues in dispute, even the
most patent truths." Mentz, 840 F.2d at 320 (internal quotation
marks omitted).  
   Nonetheless, there is widespread agreement that Rule
201(g), which makes judicial notice non-conclusive in criminal
cases, adequately safeguards the criminal defendant's Sixth
Amendment right to a trial by jury.  In rejecting a version of
201(g) that would have made judicial notice conclusive in both
civil and criminal cases, Congress emphasized that while a
"mandatory instruction to a jury in a criminal case to accept as
conclusive any fact judicially noticed is inappropriate because
contrary to the spirit of the Sixth Amendment right to a jury trial
. . . a discretionary instruction in criminal trials," is
constitutional.  H.R. Rep. 93-650, at 6-7 (1973).  Commenting on
the original draft of Rule 201 which made the judicial notice non-
conclusive in criminal cases (the version ultimately adopted by
Congress), the Advisory Committee noted:    
   The considerations which underlie the general
 rule that a verdict cannot be directed against
 the accused in a criminal case seem to
 foreclose the judge's directing the jury on
 the basis of judicial notice to accept as
 conclusive any adjudicative facts in the case.
 However, this view presents no obstacle to the
 judge's advising the jury as to a matter
 judicially noticed, if he instructs them that
 it need not be taken as conclusive.

1 Weinstein's Federal Evidence  201App.01[3] (quoting Fed.R.Evid.
201 Advisory Committee's note (March 1969 draft)).  
 Moreover, the few courts that have considered the
constitutionality of Rule 201 have reached similar conclusions.  In
Mentz, the Sixth Circuit ruled that "[a] trial court commits
constitutional error when it takes judicial notice of facts
constituting an essential element of the crime charged, but fails
to instruct the jury according to rule 201(g)." 840 F.2d at 322
(emphasis provided).  Similarly, in United States v. Jones 580 F.2d
219, 223-24 (6th Cir. 1978), the court concluded that Rule 201(g)
preserves the jury's "traditional prerogative."  More generally,
numerous Courts of Appeals have upheld judicial notice that a
location is within the jurisdiction of the United States.  
Hernndez-Fundora, 58 F.3d at 811 (2d Cir.) (federal penitentiary);
Bowers, 660 F.2d at 531 (5th Cir.) (federal penitentiary); See
Piggie, 622 F.2d at 487-90 (10th Cir.) (federal penitentiary);
United States v. Lavender, 602 F.2d 639, 641 (4th Cir. 1979)
(federal highway); Blunt, 558 F.2d at 1247 (6th Cir.) (federal
penitentiary);  United States v. Hughes, 542 F.2d 246, 248 n. 1
(5th Cir. 1976) (military base); United States v. Anderson, 528
F.2d 590, 591-92 (5th Cir. 1976) (per curiam) (federal
penitentiary); United States v. Benson, 495 F.2d 475, 481 (5th Cir.
1974) (military base);  United States v. Miller, 499 F.2d 736, 739-
40 (10th Cir. 1974) (federal penitentiary); Hayes v. United States,
367 F.2d 216, 218 (10th Cir. 1966) (federal penitentiary).  
Accordingly, we conclude that the trial court did not err by taking
judicial notice that MDC-Guaynabo was within the "special maritime
and territorial jurisdiction of the United States."
                             III.
Jury instructions
(a) Self-defense instruction
 Bello claims that the court erred in refusing to instruct
the jury on the elements of self-defense.  However, the court
correctly found that the facts of this case did not "conform[] to
the normal understanding of self-defense: a use of force necessary
to defend against an imminent use of unlawful force."  United
States v. Haynes, 143 F.3d 1089, 1090 (7th Cir.), cert denied 119
S. Ct. 260 (1998) ( 113(a)(6) case) (citing Model Penal Code
3.04(1) (1962)); 1 Wayne R. LaFave & Austin W. Scott, Substantive
Criminal Law  5.7 (1986) (defendant claiming self-defense must
show "immediate danger of unlawful bodily harm from his adversary"
and that the force used was reasonable and necessary to avoid the
danger); First Circuit Pattern Crim. Jury Instr.  5.04 ("Use of
force is justified when a person reasonably believes that it is
necessary for the defense of oneself or another against the
immediate use of unlawful force.  However, a person must use no
more force than appears reasonably necessary in the
circumstances.").
 There was no evidence Bello was in immediate danger at
the time he committed the assault in the prison recreational yard.  
Indeed, the evidence established that a cooling off period of (at
minimum) eighteen hours had passed between the alleged threat in
the dining hall and the assault in the recreation yard.  Moreover,
"absence of lawful alternatives is an element of all lesser-evil
defenses, of which self-defense is one."  Haynes, 143 F.3d at 1090-
91.  Bello could have reported the incident to the guards and
requested the protection they were required to provide,
notwithstanding his assertion that he faced greater danger from
other inmates if he were labeled a "snitch."  See Haynes, 143 F.3d
at 1090 (rejecting "snitch" defense to sneak attack on dominoes-
playing fellow inmate under  113(a)(6)).  Although "a defendant is
entitled to an instruction as to any recognized defense for which
there exists evidence sufficient for a reasonable jury to find in
his favor," Mathews v. United States, 485 U.S. 58, 63 (1988), here
the court correctly found that no reasonable jury could have found
that Bello acted in self-defense as the law defines it.  The court
did not err in refusing to instruct the jury on self-defense.
(b) Duress instruction
 "A duress defense has three elements: 1) an immediate
threat of serious bodily injury or death, 2) a well-grounded belief
that the threat will be carried out, and 3) no reasonable
opportunity to escape or otherwise to frustrate the threat."  
United States v. Arthurs, 73 F.3d 444, 448 (1st Cir. 1996).  As we
have already discussed in rejecting the self-defense claim, there
was no immediate threat of serious bodily injury or death here, and
Bello's claim thus fails at the first step.
                             IV.
The jury note
 Bello argues in his brief on appeal that the court erred
in failing to notify and consult counsel before the court responded
to the jury's note requesting "the legal definition of self-
defense."  Subsequent to oral argument in this case, the parties
stipulated that the court called counsel into chambers in order to
discuss the note from the jury requesting clarification on self-
defense.  This stipulation negates Bello's earlier assertion of
error.  
 "The preferred practice for addressing a question from a
deliberating jury includes ensuring that the question is reduced to
writing, marking the note as an exhibit for identification, sharing
it with counsel, and affording the lawyers an opportunity to
suggest an appropriate rejoinder.  Withal, this practice is not the
product of an ironclad rule, and the trial court retains a modicum
of flexibility to adjust to the exigencies of particular
situations."  United States v. Hernndez, 146 F.3d 30, 35 (1st Cir.
1998) (citations omitted).  The note was entered into the record,
and the stipulation indicates that the court met every other
element of the ideal procedure described above.  (The parties do
differ as to whether a court reporter was present in chambers, and
we have no record of what was discussed in chambers, but the
stipulation indicates that the note was discussed.)
                              V.
Sentencing issues
(a) Downward departure
 Bello claims that the court erred in not granting his
request for a downward departure.  Bello's request was predicated
on the victim's conduct (i.e. Santana's threat) and coercion and
duress, factors which the guidelines explicitly allow a court to
consider in departing from the guideline sentencing range.  See
U.S.S.G.  5K2.10 (victim's conduct), 5K2.12 (coercion and
duress).  "While affirmative decisions to depart from the
guidelines are reviewable on appeal, we ordinarily lack
jurisdiction to review a decision not to depart, unless the
sentencing court erroneously believed it lacked the authority to
depart."  United States v. Portela, 167 F.3d 687, 708 (1st Cir.
1999); see also 18 U.S.C.  3742(f); United States v. Gifford, 17
F.3d 462, 473 (1st Cir.1994) ("[A]ppellate jurisdiction may attach
if it appears that the failure to depart stemmed from the
sentencing court's mistaken impression that it lacked the legal
authority to deviate from the guideline range or, relatedly, from
the court's misapprehension of the rules governing departures.").
Bello claims that the court misunderstood that it could invoke
duress and coercion as mitigating factors justifying a downward
departure despite the fact that the court had rejected self-defense
and duress as complete defenses to conviction.  However, nothing in
the sentencing transcript supports the argument that the court
misunderstood that the departure Bello requested was legally
permissible.  The sentencing transcript, instead, betrays the
incredulity of the trial judge at the factual claim being made.  
The colloquy between the court and Bello's counsel turned entirely
on the facts of the case, and there is no indication that the court
believed that a downward departure on these grounds was unavailable
as a matter of law.  We therefore lack jurisdiction to review the
court's discretionary decision not to depart from the guideline
sentencing range.

(b) Adjustment for acceptance of responsibility
 Bello asserts that the court erred in refusing to grant
him a two-level downward adjustment for acceptance of
responsibility under U.S.S.G.  3E1.1(a).  Application Note 2 to
U.S.S.G.  3E1.1 states:
   This adjustment is not intended to apply to a
 defendant who puts the government to its
 burden of proof at trial by denying the
 essential factual elements of guilt, is
 convicted, and only then admits guilt and
 expresses remorse. Conviction by trial,
 however, does not automatically preclude a
 defendant from consideration for such a
 reduction. In rare situations a defendant may
 clearly demonstrate an acceptance of
 responsibility for his criminal conduct even
 though he exercises his constitutional right
 to a trial. This may occur, for example, where
 a defendant goes to trial to assert and
 preserve issues that do not relate to factual
 guilt (e.g., to make a constitutional
 challenge to a statute or a challenge to the
 applicability of a statute to his conduct). In
 each such instance, however, a determination
 that a defendant has accepted responsibility
 will be based primarily upon pre-trial
 statements and conduct.

U.S.S.G.  3E1.1, comment. (n.2) (emphasis added).  An assertion of
self-defense is a denial of an essential factual element of guilt
for the purposes of this guideline section.  See United States v.
Branch, 91 F.3d 699, 742 (5th Cir. 1996) (rejecting  3E1.1
reduction where defendant claimed self-defense); United States v.
Waloke, 962 F.2d 824, 832 (8th Cir. 1992) (same); see also United
States v. Bennett, 928 F.2d 1548, 1557 (11th Cir. 1991) (finding
self-defense claim one of several factors supporting
inapplicability of  3E1.1).  Moreover, Bello has failed on appeal
to refer to any statements or conduct tending to establish that he
accepted responsibility prior to trial.  The court did not err in
denying the adjustment.
 Affirmed.

</body>

</html>