# United States Court of Appeals
## FOR THE EIGHTH CIRCUIT

_____

No. 05-3782

_____

| | | |
|---|---|---|
| United States of America, | * | |
| | * | |
| Plaintiff - Appellee, | * | Appeal from the United States |
| | * | District Court for the |
| v. | * | District of South Dakota. |
| | * | |
| James Allen Gregg, | * | |
| | * | |
| Defendant - Appellant. | * | |

_____

Submitted: March 24, 2006
Filed: June 29, 2006

_____

Before BYE, RILEY, and SMITH, Circuit Judges.

_____

BYE, Circuit Judge.

James Allen Gregg appeals his convictions of second degree murder and discharge of a firearm during and in relation to a crime of violence as well as the sentences imposed by the district court.[1]  We affirm.

_____

[1]The Honorable Charles B. Kornmann, United States District Judge for the District of South Dakota.

# I

On the evening of July 3, 2004, and into the morning of July 4, 2004, Gregg, a twenty-four year old veteran who served in Iraq, was spending time with friends on the Crow Creek Reservation. Among his friends were James Fallis (James) and Jerrod Fallis (Jerrod), twin brothers of Indian heritage, whom he had known since the fourth grade.

Gregg and others, including the Fallis brothers, had been drinking most of the evening of July 3, 2004, at a bar, a residential trailer, and then finally, at a mint farm. While at the mint farm, Gregg expressed interest in a woman who rejected him to spend time with Jerrod. After receiving this rejection, Gregg and his friend Jacob Big Eagle (Big Eagle) drove around the reservation. Upon their return, they found the woman with Jerrod in James's new car, leaving the mint farm. According to witnesses, Gregg accelerated, spraying gravel onto James's new car before returning to the mint farm to rejoin the drinking party. Gregg testified he did not recall the incident or spraying dust or gravel onto James's car.

When Jerrod returned to the mint farm, he confronted Gregg about the gravel and informed his brother of the incident. The Fallis brothers, Gregg, and Big Eagle attempted to ascertain the damage. Gregg said he saw no damage, but offered to pay for any repairs resulting from sprayed gravel. There was a verbal altercation between James and Gregg, which escalated when James pushed Gregg. Gregg was then "sucker-punched" by James's companion, Francis Red Tomahawk (Chaske). While Gregg was on the ground, Chaske kicked Gregg in the head until he was stopped by Brent Sazue. Neither James nor Jerrod kicked Gregg. However, when Gregg stood up, James hit him one to three times and he fell back down.

After the fight, the party dispersed. Big Eagle, Sazue, and Jerrod, the only persons remaining on the mint farm other than Gregg, helped Gregg to his feet. Gregg, seeing his truck's domelight lit, went to his truck. He returned from his truck with a rifle, threatening Sazue and Jerrod. Big Eagle grabbed the rifle from Gregg and put it into his truck. Sazue and Jerrod then approached Gregg and asked what was wrong with him because, they claimed, friends do not pull guns on friends. Gregg apologized and thereafter Jerrod invited Gregg and Big Eagle to celebrate Independence Day with him and James. Jerrod and Sazue then left the mint farm.

As Gregg was ready to depart, Big Eagle visited with him and noticed Gregg was crying and upset. Gregg testified he was upset Big Eagle did not stand up for him during the fight. Gregg testified Big Eagle said "[if] I didn't stand up for you then, I will now." The two then departed the mint farm. Although Big Eagle had put Gregg's rifle into his car, at some point Gregg had retrieved the rifle. Gregg testified he then drove to a bluff overlooking the Missouri River to think about the events which had transpired when he noticed a rifle in his truck which did not appear to be his, but appeared to be the type of automatic rifle used in Iraq. Reminded of Iraq, he threw the rifle, along with the clips, into the river.[2]

Gregg testified he became afraid Big Eagle would confront James and Jerrod and went to look for him. In his search and approximately forty minutes after the prior altercation, Gregg arrived at Chaske's residential trailer where the group was drinking the night before.[3] Gregg saw James's car and testified he decided to

---

[2]Weeks after Gregg was indicted, his father turned the rifle over to the Federal Bureau of Investigation (FBI) without informing the FBI how he obtained it.

[3]Big Eagle was not present at Chaske's residential trailer the prior evening; he did not join the group until they were at the mint farm.

apologize again to James because he was afraid of James and wanted to avoid a family feud from forming. A witness testified to hearing Gregg ask where Chaske was.

Upon arrival, James came out of the trailer, stating, "You come back for more . . . You want to fight?" Gregg testified James then tried to pull Gregg out of his truck. Other witnesses testified James opened the door, but then closed it immediately. During the altercation, Gregg grabbed a pistol in his car and pointed it at James, telling him to back away. Gregg testified James responded by saying, "You want to fuck with guns? I got guns!" and then ran toward his truck. Three other witnesses testified they heard James say the first sentence, but they did not hear him say he had guns. As James was running away from the truck, Gregg shot at James nine times, hitting him five times in the back and wounding him fatally. Gregg then left the scene and called Big Eagle. Big Eagle informed Gregg that James had died.

Gregg was indicted on charges of first degree murder on an Indian reservation in violation of 18 U.S.C. §§ 1111, 1152, and discharge of a firearm during and in relation to a crime of violence, in violation of 18 U.S.C. § 924(c). A jury found Gregg not guilty of first degree murder, but found him guilty of second degree murder and of discharging a firearm during a crime of violence. The district court sentenced Gregg to 135 months for the second degree murder conviction and to the statutory minimum of 120 months for the conviction of discharging a firearm during a crime of violence. Pursuant to 18 U.S.C. § 924(c)(1)(D)(ii), the sentences were made to run consecutively. Gregg now appeals his convictions and sentence.

II


A


Gregg challenges his convictions arguing he lacked the state of mind necessary to support a conviction of second degree murder, the requisite crime of violence supporting the firearm charge.[4] Specifically, Gregg argues the district court erred by excluding both general opinion and reputation evidence regarding James's violent nature as well as specific acts evidence of James's alleged prior violent conduct. Gregg argues this evidence goes both to whether James was the aggressor in the confrontation and to Gregg's state of mind.


"We review the evidentiary rulings of a district court only for abuses of discretion, and will reverse only when an improper evidentiary ruling affects the substantial rights of the defendant or when we believe that the error has had more than a slight influence on a verdict." United States v. Ballew, 40 F.3d 936, 941 (8th Cir. 1994); see also United States v. Two Eagle, 318 F.3d 785, 794 (8th Cir. 2003) ("A ruling on admissibility will not be reversed on appeal absent a clear and prejudicial abuse of discretion."). If the ruling is purely a legal interpretation of the Federal Rules of Evidence, the ruling is reviewed de novo. See United States v. Smith, 383 F.3d 700, 706 (8th Cir. 2004).

---

[4]Because Gregg's challenges to the firearm charge depend upon the conclusion the conviction of second degree murder was improper, we only address Gregg's conviction for second degree murder.

Gregg argues the district court erred by preventing testimony from Gregg and other witnesses regarding specific instances of James's prior violent conduct to prove James was the aggressor. The government, by motion in limine, sought to prevent testimony regarding any specific act of violence committed by James. In response, Gregg's trial counsel notified the district court he did not intend to introduce such specific acts evidence, but would only seek to introduce reputation evidence regarding James's violent character. The district court granted the motion in limine while allowing Gregg to elicit reputation evidence regarding James's violent character.

A defendant can introduce evidence of a victim's violent character to establish conformity therewith in homicide cases where self-defense is raised. See Fed. R. Evid. 404(a)(2) ("Evidence of a person's character . . . is not admissible for the purpose of proving action in conformity therewith . . . except: . . . [e]vidence of a pertinent trait of character of the alleged victim of the crime offered by an accused, or by the prosecution to rebut the same, or evidence of a character trait of peacefulness of the alleged victim offered by the prosecution in a homicide case to rebut evidence that the alleged victim was the first aggressor."); United States v. Emeron Taken Alive, 262 F.3d 711, 714 (8th Cir. 2001) ("When a defendant raises a self-defense claim, reputation evidence of the victim's violent character is relevant to show the victim as the proposed aggressor."); see also Smith v. United States, 161 U.S. 85, 88-89 (1896) ("[E]vidence that the deceased had the general reputation of being a quarrelsome and dangerous person, was competent [with regard to issue of self-defense], especially if his character in this respect was known to the defendant . . . .").

However, a victim's violent character is not an essential element of the charge of murder or the defense of self-defense. See United States v. Talamante, 981 F.2d 1153, 1156 (10th Cir. 1992) ("When character evidence is used circumstantially to

create an inference that a person acted in conformity with his or her character, Rule 405 allows proof of character only by reputation and opinion."); <u>Bingham v. Baker</u>, 28 Fed. R. Evid. Serv. (CBC) 267, 272 (8th Cir. 1989) (per curiam) ("[The victim's] violent temper was only relevant as circumstantial evidence of his conduct, that is, as evidence that [the victim] acted in conformity therewith."); <u>cf.</u> <u>United States v. Swanson</u>, 9 F.3d 1354, 1359 (8th Cir. 1993) (holding violent character of alleged coercer is not an essential element to a coercion defense).

While reputation and opinion evidence of a victim's character may be used whenever evidence of a victim's character is admissible, Fed. R. Evid. 405(a), evidence of specific instances of a victim's prior conduct to prove action in conformity therewith is only admissible "[i]n cases in which character or a trait of character of a person is an essential element of a charge, claim, or defense." Fed. R. Evid. 405(b). Since a victim's character is not an essential element of a defense of self-defense, evidence of a victim's character used to demonstrate the victim was the aggressor is circumstantial in nature. <u>Talamante</u>, 981 F.2d at 1156; Fed. R. Evid. 404(a) advisory comm. notes ("Character evidence is susceptible of being used for the purpose of suggesting an inference that the person acted on the occasion in question consistently with his character. This use of character is often described as 'circumstantial.' Illustrations are: evidence of a violent disposition to prove that the person was the aggressor in an affray. . . ."); <u>Gibson v. Mayor and Council of City of Wash.</u>, 355 F.3d 215, 232 (3d Cir. 2004) ("Character evidence does not constitute an essential element of a claim or charge unless it alters the rights and liabilities of the parties under the substantive law.") (internal citations omitted); <u>see also</u> <u>Bingham</u>, 28 Fed. R. Evid. Serv. (CBC) at 272. "When character is used circumstantially and hence occupies a lesser status in the case, proof may only be by reputation and opinion."[5]

---

[5]Although a line of cases permits defendants to use specific instance evidence proving victims' action in conformity therewith as the aggressor, this line of cases is derived from the holding in <u>United States v. Burks</u>, 470 F.2d 432, 437 (D.C. Cir.

Fed. R. Evid. 405 advisory comm. notes. Since James's violent character is not an essential element of a claim of self-defense, the district court properly excluded evidence relating to specific instances of James's violent conduct to prove James was the aggressor in the altercation.

2

Gregg also argues the district court erred by not permitting him to elicit testimony regarding specific acts of James's violent conduct to establish Gregg's state of mind at the time of the shooting. Although specific acts evidence is not admissible to prove a victim acted in conformity with his character under Rule 405(b),[6] such

---

1972). Burks was decided before the Federal Rules of Evidence were adopted by the Supreme Court on November 20, 1972, and before they became effective on July 1, 1973. Accordingly, Burks and its progeny are inapposite to our analysis of Rules 404(a) and 405, which limit the use of specific acts evidence to prove the victim acted in conformity with the victim's violent character.

We believe the better rule is that articulated in United States v. Keiser, 57 F.3d 847, 855 (9th Cir. 1995) (holding specific acts evidence of a victim's prior violent conduct was relevant to prove the victim was the aggressor and therefore the defendant acted in self-defense, but such evidence would not prove an essential element of a self-defense claim and therefore should be excluded under Rule 405(b)), and United States v. Saenz, 179 F.3d 686, 688 (9th Cir. 1999) (holding Rule 404(b) does not exclude evidence related to specific instances of a victim's prior violent conduct when the defendant knew of the victim's prior conduct at the time of the alleged offense to show the defendant's state of mind). We express no opinion whether extrinsic evidence or additional testimony regarding the victim's prior acts may be introduced to corroborate defendant's subjective fears of imminent injury.

[6]Because Gregg never properly sought to admit specific acts evidence before the district court, the district court was never presented with the issue for ruling. Had the district court determined the evidence was proper under Rule 405, it may well have determined the evidence should have been excluded under Rule 403. See United

evidence may be admissible under Rule 404(b) to prove a defendant's state of mind. See United States v. Milk, __F.3d__, 2006 WL 1300598, at *5 (8th Cir. May 12, 2006) (recognizing evidence of specific prior bad acts is allowed under Rule 404(b) in self-defense cases to prove state of mind, but affirming exclusion of such evidence under Rule 403); United States v. Saenz, 179 F.3d 686, 688 (9th Cir. 1999) (holding Rule 404(b) does not prohibit a defendant from presenting evidence of his knowledge of a victim's prior violent behavior or bad acts which caused defendant to have a subjective fear of imminent grave injury); Virgin Islands v. Carino, 631 F.2d 226, 230 (3d Cir. 1980) (admitting knowledge of victim's prior conviction as to state of mind under Rule 404(b)); cf. United States v. Rocha, 916 F.2d 219, 241 (5th Cir. 1990) (holding evidence of a defendant's threat against an adverse witness related to the validity of his duress defense and therefore was probative of something other than the defendant's character, making the evidence admissible under Rule 404(b)). Evidence of specific instances of a victim's prior violent conduct for purposes of proving a defendant's state of mind, however, is only admissible to the extent a defendant establishes knowledge of such prior violent conduct at the time of the conduct underlying the offense charged. See Saenz, 179 F.3d at 688.

At trial, Gregg sought to make an offer of proof regarding what Gregg's testimony would have been, including his subjective fear of imminent grave injury. The offer of proof stated, "[Gregg] would have testified that he believed that James Fallis was tougher than he was, that he's not a person that he would want to have a fight with, that in his experience James Fallis could have beaten him up, and that he would not have wanted to have an ongoing feud with James Fallis." Tr. at 945. Trial counsel specifically stated the offer of proof would go to Gregg's state of mind. Id. at 946. The offer of proof was refused by the district court.

---

States v. Waloke, 962 F.2d 824, 830 (8th Cir. 1992).

Gregg argues this offer of proof was improperly denied. The offer of proof, however, identifies no specific instances of James's prior conduct, let alone any such instances known by Gregg at the time of the shooting. Accordingly, the district court did not abuse its discretion in denying the offer of proof as to specific acts evidence under Rule 404(b).[7] Two Eagle, 318 F.3d at 794 ("Given the limited proof . . ., the District Court did not abuse its discretion when it excluded the proffered evidence."); see also United States v. Kirkie, 261 F.3d 761, 767 (8th Cir. 2001) ("We will only consider an offer of proof that is contained in the record.") (internal citations omitted).

Gregg also challenges the district court's exclusion of testimony from other witnesses regarding the reputation of James's violent nature. Specifically, Gregg challenges the district court's limitation of Gregg's direct examination of Todd Cowan and Big Eagle. The district court limited Cowan's testimony to describe James as having a reputation in the community for violence and prevented him from testifying to any specific instances of James's violent conduct. Similarly, the district court limited the testimony of Big Eagle to James having a reputation in the community for hurting people and prevented him from testifying regarding any specific instances of prior violent conduct.

---

[7]Any error in denying the offer of proof regarding reputation or opinion evidence would, in any event, be harmless because the offer presented no facts not already before the jury. Cf. United States v. Martinez, 988 F.2d 685, 701-02 (7th Cir. 1993) (finding any error in not admitting defendant's knowledge of the victim's reputation for violence to prove provocation in homicide case to be harmless where jury had evidence of victim's violent conduct already before it); United States v. Cowan, 96 F.3d 1439 (4th Cir. 1996) (unpublished per curiam) (Table) (finding harmless any error resulting from an exclusion of specific acts evidence where reputation and opinion evidence of the victim's violent character was admitted).

Gregg argues the district court should have permitted additional opinion and reputation evidence from these witnesses.[8] At trial, however, Gregg did not properly seek to introduce additional reputation evidence. The district court sustained the government's objections to Gregg's direct examination of these witnesses when the responses elicited by the questions strayed from James's violent character to that of Jerrod. The district court did not abuse its discretion in sustaining the objections because the violent character of Jerrod is not relevant to Gregg's claim of self-defense since Jerrod was not present during the altercation.

Gregg made no offer of proof establishing about what these witnesses would have testified absent the district court's intervention. We are therefore left with no record against which to review the district court's exclusion of Gregg's evidence. Upon review of the transcript, we conclude the district court did not commit an abuse of discretion or legal error in its evidentiary rulings.

B

Gregg also challenges the sentence imposed upon him by the district court. We review the ultimate sentence for reasonableness. United States v. Sharpfish, 408 F.3d

---

[8]Gregg also argues these witnesses should have been allowed to testify to specific instances when James engaged in violent behavior. As noted above, character evidence of specific instances of a victim's violent conduct is inadmissible to prove action in conformity therewith. While such specific instances, when known by the defendant at the time of the offense, might be admissible to prove a defendant was aware of a victim's violent character, thereby coloring his subjective fears of imminent grave injury, Gregg provided the district court with no offer of proof establishing knowledge of any specific instance of violent conduct by James. Accordingly, the district court did not abuse its discretion in refusing to permit testimony of specific instances when James was violent.

507, 510 (8th Cir. 2005). We review de novo "whether the district court correctly applied the guidelines in determining a guidelines sentencing range." United States v. Mashek, 406 F.3d 1012, 1016-17 (8th Cir. 2005). If correctly applied, the Court must "consider whether the sentence chosen by the district court was reasonable in light of all the § 3553(a) factors." Id. at 1017-18. The "primary point of reference" in the reasonableness determination is the factors enumerated in 18 U.S.C. § 3553(a). United States v. Hadash, 408 F.3d 1080, 1083 (8th Cir. 2005). A sentence is unreasonable if the district court "fails to consider a relevant factor that should have received significant weight, gives significant weight to an improper or irrelevant factor, or considers only appropriate factors but nevertheless commits a clear error of judgment by arriving at a sentence that lies outside the limited range of choice dictated by the facts of the case." United States v. Haack, 403 F.3d 997, 1004 (8th Cir. 2005).

Gregg first argues his sentences are unreasonable because the district court did not grant his motions for downward departure. Gregg sought four downward departures: (1) aberrant behavior (United States Sentencing Guidelines (U.S.S.G.) § 5K2.20); (2) victim's conduct (U.S.S.G. § 5K2.10); (3) diminished mental capacity (post-traumatic stress disorder) (U.S.S.G. § 5K2.13); and (4) military record, family obligation, and employment history. For each departure, the district court recognized it had the authority to depart, but declined to do so. Contrary to Gregg's assertions, United States v. Booker, 543 U.S. 220 (2005), did not change the fact a denial of a motion for downward departure is not reviewable unless the district court believes it was without authority to depart. See United States v. Frokjer, 415 F.3d 865, 875 (8th Cir. 2005). Because we are without authority to review the downward departure denials, we conclude the district court correctly determined the applicable advisory Guideline range.

Once the district court determined the applicable advisory Guideline range, it imposed consecutive sentences of 135 months for the second degree murder

-12-

conviction and 120 months for the firearm conviction.  The district court correctly determined 18 U.S.C. § 924(c)(1)(D)(ii) required the application of consecutive sentences, and correctly applied the mandatory minimum sentence required by statute for Gregg's firearm conviction.  Gregg argues post-Booker, a district court has discretion to determine whether the ultimate sentence imposed is reasonable and therefore may impose a non-Guideline sentence even when a portion of the sentence is the result of a mandatory minimum sentence.  See United States v. Alexander, 381 F. Supp. 2d 884, 889-90 (E.D. Wis. 2005) (Post-Booker, "courts . . . may take into account the distortions created by mandatory minimums in order to avoid imposing a total sentence that would, under the circumstances of the particular case, be contrary to the goals of the [Sentencing Reform Act].").  This argument, however, is unavailing, because Booker does not relate to statutorily-imposed sentences.  See United States v. Warford, 439 F.3d 836, 845 (8th Cir. 2006); United States v. Rojas-Coria, 401 F.3d 871, 874 n.4 (8th Cir. 2005).

Finally, Gregg argues his sentence is unreasonable because the district court did not adequately consider the extenuating "nature and circumstances of the offense" under 18 U.S.C. § 3553(a).  Because the district court was without discretion to impose concurrent sentences or a sentence for the firearm conviction below the mandatory minimum, we consider Gregg's argument as it applies to his sentence for the second degree murder conviction.  Gregg's advisory Guideline range for the second degree murder conviction was 135 to 168 months.  The district court imposed a sentence of 135 months.

Gregg argues the district court erred by not considering the contributing conduct of James to the confrontation and the ultimate shooting.  On this issue, the district court stated, "I do not place any credence under the facts of this case in any of the victim misconduct."  The district court considered the victim's contribution to the confrontation and concluded, based upon disputed facts in the record, the victim's

contribution warranted neither a downward departure from the advisory Guideline range nor the imposition of a lower, non-Guideline sentence. Based upon the disputed facts before the court, we conclude the district court did not clearly err in making its factual findings.

The district court conducted a very thorough review of the factors of § 3553(a) and determined the low-end of the advisory Guideline range was an appropriate sentence under the circumstances. In so concluding, the district court noted various aggravating and mitigating factors. Specifically, the district court determined under the facts of the case, Gregg could have been convicted of first degree murder and noted its concern several of the shots fired by Gregg entered a trailer where people resided and endangered nearby children. The district court also refused to apply two sentencing enhancements: (1) obstruction of justice for false testimony to law enforcement officials, and (2) reckless endangerment of the safety of the arresting officers by resisting arrest. The district court also acknowledged Gregg may well be suffering from post-traumatic stress, but concluded Gregg, at the time of the altercation, was not of a mental state which would warrant the application of a diminished mental capacity departure. Finally, the district court noted Gregg's history and characteristics were favorable to him.

After considering the district court's application of the Guidelines and the § 3553(a) factors, we agree with the district court a sentence of 135 months is reasonable for Gregg's second degree murder conviction.

We therefore affirm the district court.

_____