# United States Court of Appeals
## FOR THE EIGHTH CIRCUIT

_____

No. 10-3142

_____

James Allen Gregg,

        Appellant,

v.

United States of America,

        Appellee.

\* \* \* \* \* \* \* \* \* \*

Appeal from the United States
District Court for the
District of South Dakota.

_____

Submitted: October 20, 2011
Filed: March 16, 2012

_____

Before BYE, SMITH, and COLLOTON, Circuit Judges.

_____

SMITH, Circuit Judge.

In January 2005, a jury convicted James Allen Gregg of second degree murder, in violation of 18 U.S.C. §§ 1152 and 1111, and use of a firearm during a crime of violence, in violation of 18 U.S.C. § 924(c). On appeal, Gregg argues that the district court[1] erred in denying his habeas petition for a new trial due to ineffective assistance of counsel. Gregg argues that his trial counsel's failure to offer specific instances of the victim's violent character to show Gregg's state of mind prejudiced his defense. We affirm.

_____

[1]The Honorable Charles B. Kornmann, United States District Judge for the District of South Dakota.

## I. *Background*

On July 3, 2004, Gregg, an army veteran, visited friends on an Indian reservation. While at a party, Gregg argued with James Fallis and Francis Red Tomahawk about damage he had allegedly caused to Fallis's vehicle. The two confronted Gregg about the damage, and the dispute escalated. Gregg offered to pay for the vehicle's repair and stated that he did not intentionally damage the vehicle. Still, Red Tomahawk unexpectedly punched Gregg in the face. After receiving the blow, Gregg fell to the ground. Red Tomahawk then kicked Gregg in the head. As Gregg attempted to stand, Fallis punched him in the face. At that point Gregg lost consciousness. The beating broke bones in Gregg's face and nearly closed one of his eyes. After regaining consciousness, Gregg became visibly upset and started crying. Gregg was unsure who had just assaulted him. Gregg then went to his truck and grabbed his rifle, but his friend, Jacob Big Eagle, persuaded him to put the rifle away. At this point, Gregg accused Big Eagle of not standing up for him. Big Eagle responded, "[If] I didn't stand up for you then, I will now." Big Eagle entered his vehicle and drove away.

According to Gregg, he believed that Big Eagle left to confront Fallis or Red Tomahawk. Gregg decided to find Big Eagle to prevent another altercation. Less than an hour after the dispute with Fallis, while searching for Big Eagle, Gregg saw Fallis's car outside a mobile home. Gregg pulled into a driveway. He believed that he should apologize to Fallis to prevent discord between their families. As Gregg pulled into the driveway, Fallis exited the mobile home, ripping off his jacket as he walked towards Gregg's vehicle. While walking, Fallis shouted, "You come back for some more of this [expletive]? You want to fight?" Fallis then attempted to open Gregg's car door, but Gregg pulled the door shut. Fearing further injury, Gregg grabbed a handgun, pointed it at Fallis, and warned him to back away. In response, Fallis yelled, "You want to f--- with guns?" Fallis then turned and moved towards the trunk of his own vehicle. Gregg then fired nine shots at Fallis—five hitting him in the back—killing him.

At trial, Gregg acknowledged killing Fallis, but argued that he did so in self defense. Gregg's trial counsel incorrectly believed that he could not introduce into evidence specific acts of violent conduct that Fallis committed to support Gregg's state of mind. Under Federal Rule of Evidence 404(b), such evidence could not have been introduced to prove Fallis was the aggressor, but could have been used to show Gregg's state of mind. The only evidence Gregg proffered regarding his knowledge of Fallis's violent nature was Gregg's opinion that Fallis was "tough." After a four-day trial, the jury convicted Gregg of second degree murder.[2]

On direct appeal, Gregg raised several grounds challenging his conviction and sentence. *See United States v. Gregg*, 451 F.3d 930 (8th Cir. 2006). Most pertinent to this appeal, Gregg argued that the district court erred by not permitting him to elicit testimony regarding Fallis's specific violent acts for the purpose of showing Gregg's state of mind at the time he shot Fallis. *Id.* at 933. We affirmed. In order to introduce evidence of specific instances of a victim's prior violent conduct for purposes of proving a defendant's state of mind, the defendant must establish that he knew of such prior violent conduct at the time of the conduct of the underlying offense. *Id.* at 935. Gregg made an offer of proof to the district court after the court excluded Gregg's testimony of his state of mind. Gregg's counsel represented that Gregg would have "testified that he believed that James Fallis was tougher than he was, that he's not a person that he would want to have a fight with, that in his experience James Fallis could have beaten him up, and that he would not have wanted to have an ongoing feud with James Fallis." Gregg's trial counsel, however, did not produce evidence of specific instances of Fallis's violent conduct under 404(b) to show Gregg's state of mind. *Id.* The district court refused the offer of proof. On review, we declined to find an abuse of discretion by the district court.

---

[2]The government had sought a first degree murder conviction.

Based on his trial counsel's performance, Gregg filed this 28 U.S.C. § 2255 motion arguing ineffective assistance of counsel. Under *Strickland v. Washington*, a defendant alleging ineffective assistance of counsel must show two things:

> First, the defendant must show that counsel's performance was deficient. This requires showing that counsel made errors so serious that counsel was not functioning as the "counsel" guaranteed the defendant by the Sixth Amendment. Second, the defendant must show that the deficient performance prejudiced the defense. This requires showing that counsel's errors were so serious as to deprive the defendant of a fair trial, a trial whose result is reliable. Unless a defendant makes both showings, it cannot be said that the conviction or death sentence resulted from a breakdown in the adversary process that renders the result unreliable.

466 U.S. 668, 687 (1984).

At Gregg's § 2255 motion hearing, the magistrate judge found that Gregg's trial counsel was ineffective under *Strickland*'s first prong. Addressing *Strickland*'s second prong—prejudice—the magistrate judge found compelling two specific instances of Fallis's conduct that Gregg would have sought to admit: (1) a widely known incident that occurred in 1999 where Fallis threatened to assault an officer on a boat dock with a tire iron, which led another officer to draw his weapon to control Fallis (the "boat dock incident"); and (2) an incident that allegedly occurred between 2003 and 2005 during which Fallis was thrown out of a bar for fighting, but in attempting to continue the fight outside bar, he climbed on a car to prevent the other party from leaving (the "bar incident"). *Gregg v. United States*, No. Cr. 04-30068, No. Civ. 07-3030, 2009 WL 6700480 at *17–19 (D. S.D. Aug. 14, 2009). Gregg's father told Gregg about both of these incidents, and he believed them to be true. *Id.* Upon hearing this testimony, and focusing on the importance of the defendant's state of mind in a self-defense case, the magistrate judge found that the testimony would have created a

reasonable doubt in Gregg's conviction. *Id.* at *21–22. Thus, the magistrate judge recommended that the district court grant Gregg a new trial. *Id.* at *22.

Rejecting the magistrate judge's recommendation, the district court[3] found that Gregg's counsel's deficiency did not prejudice Gregg under *Strickland*. *United States v. Gregg*, No. Cr. 04-30068, No. Civ. 07-3030, 2010 WL 3003235 at *4 (D. S.D. July 30, 2010). In reaching this conclusion, the district court found that the evidence would not have changed the outcome of Gregg's trial and that the court would have excluded the evidence under Rule 403. *Id.*

## II. *Discussion*

Gregg argues that the district court erred in finding that his trial counsel's actions did not prejudice him. Because neither party challenges the district court's finding that Gregg satisfies *Strickland*'s first prong—whether counsel's representation was deficient—we assume without deciding that Gregg has satisfied this prong. In reviewing a denial of a § 2255 motion, "[w]e review the district court's legal conclusions *de novo* and its factual findings for clear error." *Loefer v. United States*, 604 F.3d 1028, 1029 (8th Cir. 2010).

To satisfy *Strickland*'s second prong, a defendant must "affirmatively prove prejudice." *Strickland,* 466 U.S. at 693. "[T]he defendant must show that [his or her counsel's error] actually had an adverse effect on the defense." *Id.* "It is not enough for the defendant to show that the errors had some conceivable effect on the outcome of the proceeding," but rather, "[t]he defendant must show that there is a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different." *Id.* at 693–94. "A reasonable probability is a probability sufficient to undermine confidence in the outcome." *Id.* at 694. In addition, in cases where the alleged prejudice arose from a failure to introduce evidence, we must also

---

[3]The same judge that presided over Gregg's trial.

apply Rule 403 to determine if the evidence would have likely been admitted. *See Gregg*, 451 F.3d at 935 n.6 ("Had the district court determined the evidence was proper under Rule 405, it may well have determined the evidence should have been excluded under Rule 403."); *see also United States v. Chase*, 451 F.3d 474, 479–480 (8th Cir. 2006) (affirming a district court's exclusion of Rule 404 state of mind evidence under Rule 403).

The Rule 404(b) evidence that Gregg seeks to have admitted in a new trial does not establish "a reasonable probability that . . . the result of the proceeding would have been different." *Strickland*, 466 U.S. at 693–94. At trial, in relation to Gregg's state of mind, Gregg testified only to Fallis's toughness. Although both of the incidents that Gregg seeks to admit show that Fallis acted aggressively and potentially violently on two occasions, only the boat dock incident involves the threat of serious bodily injury. But even in that incident, Fallis did not actually injure any person. At most, the incidents Gregg seeks to admit show that Fallis could be belligerent and aggressive. But Gregg introduced evidence to that effect at trial. Specifically, the trial court allowed the jury to review evidence of Fallis's violent and aggressive nature through two witnesses who testified about his reputation. Additional evidence making that same point would have been cumulative. Moreover, the jury heard in great detail how Fallis severely battered Gregg an hour before Gregg shot him. In addition, the jury heard that Fallis may have intended to assault Gregg again immediately before Gregg shot him. The jury knew Fallis exited the mobile home, ripped off his jacket and yelled, "You come back for some more of this [expletive]? You want to fight?" Fallis then attempted to open Gregg's car door. Given the record and the facts

weighing against Gregg's self-defense claim,[4] we are not persuaded that there exists a reasonable probability that the result of the proceeding would have been different.

Even assuming that Fallis's two violent acts could cast doubt on the jury's verdict, the trial court likely would have excluded the evidence under Rule 403 or 404(b).[5] Rule 403 imposes a balancing test, permitting a trial judge to exclude relevant evidence "if its probative value is substantially outweighed by a danger of . . . unfair prejudice." Fed. R. Evid. 403. Similarly, Rule 404(b) contains its own balancing test. *See United States v. Yielding*, 657 F.3d 688, 701 (8th Cir. 2011) (stating that Rule 404(b) evidence is admissible "when it is: (1) relevant to a material issue; (2) similar in kind and close in time to the crime charged; (3) supported by sufficient evidence; and (4) *such that its probative value is not outweighed by any prejudicial impact*" (quotation and citation omitted) (emphasis added)). Thus, a trial court may exclude the 404(b) evidence if it finds that the prejudicial nature of the evidence outweighs its probative value.

---

[4]Several facts militated against the jury finding Gregg acted in self-defense. First, Gregg stopped when he saw Fallis's car although he was searching for his friend Big Eagle to avoid further conflict with Fallis. Second, Gregg indicated that he was unsure that Fallis ever hit him. Third, Gregg acknowledged that he was able to pull his car door shut against Fallis, but instead of locking it, he drew his firearm. Fourth, Gregg did not leave after he pulled his car door shut. Finally, Gregg fired nine shots at the unarmed Fallis while he had his back turned to Gregg. The jury could have believed that he intended to kill Fallis rather than just prevent him from getting a gun.

[5]In making this determination we are required to predict what a trial court would have done if Gregg's counsel had attempted to admit the 404(b) evidence. The dissent correctly notes that the district court improperly considered its own propensities in determining whether a trial court presented with the 404(b) evidence would have admitted the evidence. But as seen in *United States v. Milk*, 447 F.3d 594, 601 (8th Cir. 2006), we disagree with the dissent that "a reasonable, conscientious[,] and impartial decisionmaker" would not have excluded the two specific instances of Fallis's violent conduct as unduly prejudicial.

*United States v. Milk*, 447 F.3d 594 (8th Cir. 2006) illustrates this point. In that case, a defendant accused of murder on an Indian reservation sought to introduce specific instances of the victim's violent conduct. *Id.* at 597. Excluding the evidence, the trial court found that the prejudicial effect outweighed the probative value of the evidence. *Id.* In reaching this conclusion, "the court reasoned that [the specific instance at issue] happened roughly five years before the [instant crime], and that in the meantime, [the defendant and the victim] remained close friends, which suggested [the defendant] was not scared of [the victim]." *Id.* Upholding the trial court's exclusion of the evidence, we stated that "the district court 'has wide discretion in determining the admissibility of evidence.'" *Id.* at 600 (quoting *United States v. Waloke*, 962 F.2d 824, 830 (8th Cir. 1992). We noted that the court acted within its discretion by admitting reputation evidence and specific acts of violence by the defendant that occurred that day. *Id.* at 600–01.

Here, a district court would have likely reached a similar conclusion by excluding the specific instances of violence, aside from the violence that occurred that day, but allowing evidence of the victim's violent reputation. Like the excluded incident in *Milk*, the boat dock incident occurred five years prior to Gregg's encounter with Fallis. Thus it was remote in time to the dispute between Gregg and Fallis. Similarly, the bar incident, while closer in time, is prejudicial because Gregg could not provide enough details about the incident for the court to determine whether it was similar in kind. The incident shows that Gregg believed that Fallis was highly aggressive and allegedly willing to go so far as to jump on top of a car to prevent his opponent from leaving. However, there are no facts showing that Fallis's opponent was not able to leave and avoid further conflict despite Fallis's antics. A court likely would exclude this evidence to prevent mini-trials of the victim's character and to prevent juror confusion. *See Milk*, 447 F.3d at 600; *Waloke*, 962 F.2d at 830.

-8-

Because we find that the 404(b) evidence that Gregg's trial counsel failed to admit did not prejudice Gregg under *Strickland*, the district court did not err in denying Gregg's motion for a new trial.

### III. *Conclusion*

Accordingly, we affirm the judgment of the district court.

BYE, Circuit Judge, dissenting.

If the jury in Gregg's murder trial had before it evidence of specific instances of the victim's violent conduct in order to explain Gregg's state of mind at the time of the shooting, evidence his trial counsel failed to offer, there is "a reasonable probability . . . the result of the proceeding would have been different." Strickland v. Washington, 466 U.S. 668, 694 (1984). I therefore respectfully dissent.

I

Before discussing why I disagree with the majority's legal analysis, I believe it is necessary to more thoroughly describe the two specific instances of the victim's violent conduct which Gregg seeks to admit in a new trial. Only a thorough description of the two incidents, when compared to the marginal state-of-mind evidence Gregg was allowed to introduce in his murder trial, demonstrates why the failure to introduce the evidence prejudiced Gregg's theory of self defense.

A.     The Boat Dock Incident

In the summer of 1999, James Fallis (the victim) had an altercation with one of Gregg's cousins and two wildlife conservation officers which garnered notoriety in the community and well demonstrated Fallis's violent propensities. Gregg heard about the incident from his father and grandfather, as well as neighbors, friends, and

-9-

other relatives. The incident started when Fallis spun his vehicle in tight circles (commonly referred to as donuts or cookies) near a boat dock in the Lake Sharpe area of the Missouri River. The vehicle's tires spit gravel on a number of people gathered in the area. A female wildlife conservation officer was present and confronted Fallis about his behavior. Fallis went into a fit of rage after being challenged by the female officer, and took after her as she walked away. Gregg's cousin, Todd Cowan, was present at the boat dock area with his children. Cowan intervened to stop Fallis from attacking the female officer. Fallis then retreated to his vehicle, retrieved a large tire iron, and returned to attack Cowan with the tire iron.

Before Fallis could hit Cowan with the tire iron, a second wildlife conservation officer, Leon Leuning, positioned himself between the two men. Leuning's description of Fallis's behavior (both in an interview occurring prior to the original trial and then again at the evidentiary hearing in this proceeding) is especially telling. Leuning said Fallis raised the tire iron above his head in a menacing fashion and moved toward Cowan. Fallis's speech was incomprehensible. He was frothing at the mouth and "blowin' snot and spit" and "totally out of control." App. at 115. His eyes were out of focus. Leuning believed Cowan was in imminent danger. Leuning drew his weapon and ordered Fallis to drop the tire iron several times. Fallis was between six and twelve inches from the barrel of Leuning's gun, which was pointed directly at Fallis's face. Even with a gun in his face, Fallis was in such a rage that he continued his attempts to hit Cowan with the tire iron. Leuning finally told Fallis to drop the weapon or he would "blow his head off." Id. at 236. Fallis finally dropped the tire iron, and Leuning placed him in handcuffs. Leuning opined that Fallis had "psychopathic tendencies" and an "explosive violent temper" and went "ballistic when he got pissed." Id. at 118, 120.

-10-

B.     The Longbranch Saloon Incident

In 2003 or 2004, Gregg's father told him about another incident involving Fallis. Fallis got into an altercation with a couple inside the Longbranch Saloon in Pierre, South Dakota. A bouncer at the bar ordered all three to leave the bar, then witnessed what happened when the three were outside. Outside the bar, Fallis wanted to fight with the man. The man did not want to fight, and he and his girlfriend got into their car. Fallis would not let them leave. When the man tried to back out of the parking lot, Fallis jumped on the hood of the car, banging his fist on the hood and the windshield. As a result of what the bouncer witnessed, the Longbranch Saloon banned Fallis from the bar for life. This reinforced Gregg's impression that he should stay away from Fallis because Fallis would not let anyone get away from a fight even if they wanted to back down. At the evidentiary hearing in this habeas proceeding, Gregg stated "once [Fallis] had his eyes locked on you, he was going to – he was going to follow through with it no matter what the task." Id. at 174.

In addition to these two specific instances, Gregg had additional knowledge of Fallis which affected his state of mind on the night he shot Fallis. His knowledge of Fallis dated back to his own childhood when Fallis would bully Gregg's sister and other young children on the school bus, and when Fallis got kicked out of school due to his behavior. Gregg knew about a fight between Fallis and another boy over a girl where the girl "took off and hid behind the trees because it was so violent." Id. at 164. Because Fallis had a violent temper and never backed down, Gregg "always wanted to stay on his good side" and did not want to be "viewed as a threat to him or anything of that nature." Id. at 160.

At the evidentiary hearing, Gregg explained how his knowledge of Fallis's violent approach to confrontations affected his state of mind at the time of the shooting:

-11-

I was precluded from saying exactly why I was afraid of him, why I was scared of him. If I could have given these instances that I knew of before, the way he acted that night, I mean, the way he come after me, the way he had this temperament about him, the look in his eyes – I mean, if you could have seen all of that that night and you would have known these past experiences from him, I mean, it would have been like the greatest fear in your life coming alive right in front of you. I mean there's no getting around it. There is – this guy was going to kill me.

. . .

When he turned, he made the motion that he was going to get a gun out of the trunk of his car. I mean, at that point, everything that I've heard about him, you know, what I just seen from him that moment, I mean, I was so scared. I mean, I've never been so scared in my life. This is something over the top of what I even experienced over in Iraq. I mean, this guy was going to kill me because I was trying to defend myself. And the only way I could keep him from getting me out of that truck was to pull a gun. And I wanted him to back away, and I said that. He backed up and he made the further threat. "Oh, you want to fu-- with guns? Well I got guns." And he ran right to the trunk of his car. I had to stop him. I couldn't let him get to the trunk of his car. I had to stop him. There was no getting out of the situation. I was in a dead-end road. I couldn't back up. There was no lights. There's people all around me. There was no way I could get out of there. I couldn't let him get a gun out of the trunk and shoot me.

. . .

He's never been known to back down out of a fight. He's – all of the instances that I've known – I mean, he attacks a park ranger with a tire iron, you know. He's coming after him. He comes after Todd with a tire iron just because he stops him, you know, from attacking a woman. He won't let a person leave a fight at the Longbranch. I mean all these instances, it just clicked right then and there, you know. I 've had all these feelings about him, you know, wanting to stay away from him, you know, as much as I could and be on his good side, you know. And it all drops dead right there, and he comes right after me, you know.

There's no way I could – he was just – he's vicious.  If you could see it in his eyes, I mean, you would have known.  You would have seen his body movements, the way he acted, his threatening speech, you know, everything, how he was – his face, the motions he was going through. I mean, I wish everyone else could have seen it because then they would have – they would have understood me.

Id. at 180-83.

## II

At his original trial, Gregg was only allowed to acknowledge he was scared of Fallis.  That was the limit of the state-of-mind evidence heard by the jury.  Gregg was never given the opportunity to explain *why* he was scared, and without such an explanation, he was essentially denied the right to present a claim of self defense. When Gregg tried to proffer evidence he was scared of Fallis because Fallis was "tough," the trial court did not even allow that limited explanation of Gregg's state of mind:

Defense Counsel:  Were you scared of [Fallis] at all?

Prosecutor:  I'm going to object, Your Honor.

The Court:  Overruled.

Gregg:  Just wanted to stay on the good side, yeah.

Defense Counsel:  Why was that?

Gregg:  Just because they're tough and —

Government:  I'm going to object.  They —

The Court:  Sustained.  The answer is stricken.  The jury should disregard that.

App. at 578.

The right of an accused to present a defense is well established as a fundamental element of due process. See, e.g., Washington v. Texas, 388 U.S. 14, 19 (1967). If the jury had been presented with meaningful evidence of Gregg's state of mind, it may very well have concluded he "unreasonably but truly believed that deadly force was necessary to defend himself," and thus did "not have the requisite mens rea to be guilty of second-degree murder." United States v. Milk, 447 F.3d 593, 599 (8th Cir. 2006). State of mind evidence is particularly critical in self defense cases because "the crux of [the] defense rest[s] on [the defendant's] credibility." United States v. James, 169 F.3d 1210, 1215 (9th Cir. 1999).

The majority concludes there is no reasonable probability the result of the proceeding would have been different if the jury had heard Gregg's state of mind evidence, but even assuming there is doubt on that issue, Gregg failed to prove he was prejudiced because "the trial court likely would have excluded the evidence under Rule 403 or 404(b)." Ante at 7. I disagree. First of all, what *this* trial court likely would have done is irrelevant under a proper Strickland analysis. In denying Gregg's § 2255 motion, the district court (who was also the trial court who presided at the original murder trial) concluded the outcome of the case would not have been different, even if trial counsel had offered evidence of the victim's prior violent conduct, because it would have excluded the evidence in any event. United States v. Gregg, No. CR 04-30068, 2010 WL 3003235, at * 4 (D. S.D. July 30, 2010). The district court based its decision on its own propensities regarding evidence offered under Federal Rule of Evidence 404(b). See id. at *3 ("As stated, my practice has been for years to rarely admit such evidence because I believe it often violates Fed. R. Evid. 403.").

-14-

It was improper for the district court to consider its own propensities in assessing whether Gregg was prejudiced by his trial counsel's failures. "The assessment of prejudice . . . should not depend on the idiosyncracies of the particular decisionmaker, such as unusual propensities toward harshness or leniency." Strickland, 466 U.S. at 695. "[A] particular judge's . . . practices should not be considered in the prejudice determination." Id. Rather, "[t]he assessment of prejudice should proceed on the assumption that the decisionmaker is reasonably, conscientiously, and impartially applying the standards that govern the decision." Id. Applying Strickland's standard, I do not believe a reasonable, conscientious and impartial decisionmaker would have excluded the two specific instances of Fallis's violent conduct because the evidence was critical to Gregg's state of mind at the time of the shooting, and critical to his due process right to present a claim of self defense.

To be admissible under Rule 404(b), the two incidents had to be "similar in kind and close in time to the event at issue" and "supported by sufficient evidence to support a finding by the jury that the act[s] occurred." United States v. Chase, 451 F.3d 474, 479 (8th Cir. 2006). If admissible under Rule 404(b), the two incidents should not have been excluded unless their "probative value [was] substantially outweighed by the danger of unfair prejudice." "When evidence is offered to prove state of mind [under Rule 404(b)], we presume that the evidence is admissible for that purpose." Chase, 451 F.3d at 479. "A district court abuses its discretion if evidence of a critical nature is excluded and there is no reasonable assurance that the jury would have reached the same conclusion had the evidence been admitted." Harris v. Chand, 506 F.3d 1135, 1140 (8th Cir. 2007) (internal quotation marks and citation omitted).

I believe the two incidents were similar in kind and close enough in time that they should have been admitted. Although the boat dock incident occurred roughly five years before Gregg shot Fallis, the incident occurred when Fallis was an adult and reflected the manner in which he conducted himself as an adult during a

-15-

confrontation. Fallis's behavior at the boat dock was similar to Gregg's version of the events on the night of the shooting, in that Fallis retreated to his vehicle only to return armed with a deadly weapon and ready to attack, despite being threatened with a deadly weapon himself. Officer Leuning's description of Fallis's demeanor at the boat dock (i.e., incomprehensible speech, "totally out of control," his eyes out of focus) was similar to Gregg's description of Fallis's demeanor on the night of the shooting (i.e., the look in his eyes, his threatening speech, his body movements). The Longbranch Saloon incident was also similar in that it reflected Fallis's unwillingness to walk away from a confrontation without resorting to violent behavior.

This case stands in stark contrast to Milk, where a five-year-old incident of the victim's violent conduct was excluded because the defendant and victim had become close friends in the meantime, "which suggested [the defendant] was not scared of [the victim]." 447 F.3d at 597. Here, Gregg testified he had always been afraid of Fallis, trying to be friendly only out of necessity "to stay on his good side" so as not be viewed as a threat *specifically because* Fallis was such a violent person. In addition, there was no evidence that Fallis's violent approach to confrontations had changed at all in the five years between the boat dock incident and the shooting, as demonstrated by the more recent incident at the Longbranch Saloon.

The meager, almost non-existent evidence Gregg was allowed to offer at his trial regarding his state of mind did not satisfy his due process right to present a claim of self defense. If the jury had been given a clear picture of Gregg's knowledge of the violent, explosive, and out of control manner in which Fallis conducted himself during a confrontation, it may well have decided Gregg truly believed he needed to use deadly force to defend himself on the night of the shooting, even if his belief was unreasonable. I would therefore reverse the judgment of the district court, and grant Gregg a new trial.

For the reasons stated above, I respectfully dissent.

_____