IN THE UNITED STATES COURT OF APPEALS
FOR THE FIFTH CIRCUIT

United States Court of Appeals
Fifth Circuit

**F I L E D**

December 10, 2007

Charles R. Fulbruge III
Clerk

No. 06-31038

UNITED STATES OF AMERICA

Plaintiff - Appellee

v.

ISREAL CALDWELL

Defendant - Appellant

Appeals from the United States District Court
for the Eastern District of Louisiana
USDC No. 2:06-CR-00023

Before JONES, Chief Judge, and WIENER and CLEMENT, Circuit Judges.

PER CURIAM:[*]

Defendant-Appellant Isreal Caldwell was convicted of assault resulting in serious bodily injury in violation of 18 U.S.C. § 113(a)(6). He appeals his conviction, contending that the district court committed reversible error by (1) excluding a job performance evaluation of the victim from being introduced into evidence and (2) finding insufficient evidence to warrant a justification instruction. We affirm.

---

[*] Pursuant to 5TH CIR. R. 47.5, the court has determined that this opinion should not be published and is not precedent except under the limited circumstances set forth in 5TH CIR. R. 47.5.4.

## I. FACTS AND PROCEEDINGS

At the time of the incident giving rise to this appeal, Caldwell and the victim of the assault, Gheorghe Catana, worked aboard the M/V DULARGE, Caldwell as a cook and Catana as an able-bodied seaman and crane operator. Catana stood 6'2", weighed over 200 pounds, and was described as "very fit"; Caldwell was a foot shorter and weighed twenty to thirty pounds less than Catana.

On October 17, 2003, Caldwell was cooking breakfast in the galley when Catana entered and criticized Caldwell's cooking and appearance. Following an exchange of words, Caldwell left his food preparation post in the galley, approached Catana, and either pushed or slapped him. Catana responded in turn by either slapping or punching Caldwell, and in response Caldwell took out a knife and stabbed Catana in the left side of his abdomen. Catana was evacuated by Coast Guard helicopter and underwent emergency surgery for a twice-punctured colon. Treating surgeon Dr. Paul Mace testified that Catana's injuries would have been fatal had he not received medical attention.

The stabbing on October 17, 2003 was the culmination of a series of exchanges between the two men. The previous evening, Catana had complained that Caldwell had undercooked the dinner, asking Caldwell, an African American, if he "had been cooking for cannibals in Africa." Caldwell retorted that Catana's girlfriend had left him because he complained too much. The two men ultimately resolved their argument that evening and shared a cigarette. The morning of the stabbing, Catana arrived at the galley shortly after 4 a.m., about an hour early for breakfast. When Catana noticed that Caldwell was not at his food preparation post, he proceeded to Caldwell's cabin to wake him. Catana knocked on Caldwell's door, and, when Caldwell failed to respond, Catana opened the door and told Caldwell to get up and prepare breakfast. This

angered Caldwell. About a half-hour after this exchange, the men got into the altercation that resulted in Catana's stabbing.

Caldwell was indicted on January 27, 2006 for assault with a dangerous weapon with intent to do bodily harm on the territorial waters of the United States, in violation of 18 U.S.C. § 113(a)(3). The case proceeded to trial in May 2006, but it ended in a hung jury two days later. Thereafter, the grand jury returned a one-count superseding indictment charging Caldwell with assault resulting in serious bodily injury in violation of 18 U.S.C. § 113(a)(6).

At the second trial, Caldwell attempted to introduce into evidence a job performance evaluation of Catana that had been prepared by Captain Albert "Chet" Adams in December 2003, approximately two months after the stabbing. The evaluation was offered in support of Caldwell's contention that Catana was "a bully." That evaluation is a single-sheet form, which, in pertinent part, lists ten categories relevant to job performance that are scored on a 1-5 basis, with a score of 1 denoting "poor" performance and a score of 5 denoting "excellent."[1] Catana's scores were relatively poor, ranging from 1 to 3 in each category. Additionally, there is room on the form next to each category in which brief notations may be made, as well as a general "Comments" section at the bottom of the form. Notably, next to the category "Works Well with Others," Adams had written "gets into altercations," and next to "Conducts Self in a Professional Manner," Adams had written "argues and wants to fight." And, in the general "Comments" section, Adams "recommend[ed] termination if [Catana] continues to get into arguments/altercations with crew members."

In excluding the evaluation from evidence, the court noted that it was cumulative as it did not "tend to show a character or a character trait that's

---

[1] The categories consist of "Works Safely," "Attitude," "Hygiene," "Shows Initiative," "Dependable," "Productivity," "Accepts Work Willingly," "Begins Work at Appointed Time," "Works Well with Others," and "Conducts Self in a Professional Manner."

material to the case other than what already has been brought out" and that "anything that [the document] would lend to the jury's exposure to Mr. Catana has been covered and will be covered with other witnesses . . . ." The court also observed that admission of the evaluation would have the potentiality of confusing and misleading the jury, as it would lead to the admission of other evidence that did not concern the incident at issue. Pursuant to Federal Rule of Evidence 404(a)(1), if evidence pertaining to a victim's violent character is allowed, then evidence of the assailant's violent character is also admissible.[2] The court remarked that the prejudicial effect of both sides' character evidence might "take the jury's focus off of this case and put[] it on other cases." Finally, the court questioned the relevance of what Catana did after he returned to work, including the fact that his job performance was poor.

At trial, Caldwell also requested that the court instruct the jury on justification for the use of deadly force. The court refused to give the instruction, finding that Caldwell had not established an evidentiary foundation for the defense.

Caldwell was ultimately convicted and sentenced to a ninety-month term of imprisonment. He timely filed a notice of appeal.

---

[2] In preparation for trial, the government sought unsuccessfully to introduce evidence of other violent acts by Caldwell, including resisting arrest with violence as well as allegations that he assaulted his wife with a kitchen knife.

## II. ANALYSIS

A.    Evaluation

We review the district court's evidentiary ruling for abuse of discretion.[3] If we find an abuse of discretion, we review the ruling under the harmless-error doctrine.[4]

Caldwell contends that the December 21, 2003 evaluation of Catana should have been admitted as character evidence under Federal Rule of Evidence 404(a)(2) and as impeachment evidence. Rule 404(a)(2) carves out an exception to the rule against character evidence for that relating to "a pertinent trait of character of the alleged victim of the crime offered by an accused."[5] Caldwell argues that the evaluation concerned Catana's belligerent and violent nature, which was critical to supporting Caldwell's claim of self-defense. Additionally, Caldwell asserts that the evaluation contradicted testimony offered at trial, which portrayed Catana as merely socially inept and abrasive, rather than as a violent aggressor. Accordingly, Caldwell maintains that the evaluation should have been admitted as impeachment evidence.

After carefully considering the briefs and the record on appeal, we conclude that Caldwell's objections to the evidentiary decision made by the district court are without merit. Federal Rule of Evidence 403 specifies that "[a]lthough relevant, evidence may be excluded if its probative value is substantially outweighed by the danger of unfair prejudice, confusion of the issues, or misleading the jury, or by considerations of undue delay, waste of time,

---

[3] United States v. Sanders, 343 F.3d 511, 517 (5th Cir. 2003) (citing United States v. Guerrero, 169 F.3d 933, 943 (5th Cir. 1999)).

[4] Id. (citing United States v. Townsend, 31 F.3d 262, 268 (5th Cir. 1994)).

[5] FED. R. EVID. 404(a)(2).

or needless presentation of cumulative evidence."[6] We conclude that the district court did not abuse its discretion in ruling that any probative value of the evaluation was substantially outweighed by the aforementioned considerations.

A victim's character is not an essential element of a self-defense claim[7]; however, reputation or opinion evidence of a victim's violent character may be used to support a claim of self-defense.[8] The evaluation of Catana, though, is not particularly probative of his violent character. Adams made only brief notations that Catana "argues and wants to fight" and "gets into altercations." Such comments are ambiguous at best as they could relate to oral disagreements, rather than physical ones. Moreover, the evaluation was completed by Adams on December 21, 2003 – more than two months after the stabbing incident – and was limited to the preceding "hitch."[9] As such, the evaluation does not necessarily speak to Catana's violent propensities at the time of the incident. His poor work performance and hostile behavior might well be attributed to the physical and emotional aftermath of the trauma he suffered on October 17, 2003.

Additionally, the evaluation was cumulative in view of the repeated testimony that Catana was argumentative and often engaged in verbal altercations with other crew members. Adams testified that Catana had an ongoing problem with "slackers" and often engaged in arguments with crew members who he felt were not doing their jobs. First mate Tommy Mathis

---

[6] FED. R. EVID. 403.

[7] United States v. Gregg, 451 F.3d 930, 934 & n.5 (8th Cir. 2006) (citing "the better rule" in United States v. Keiser, 57 F.3d 847, 855 (9th Cir. 1995)).

[8] See, FED. R. EVID. 404(a)(2); FED. R. EVID. 404 advisory committee's note.

[9] A "hitch" is a two-week stint; crew members generally serve two weeks on board followed by two weeks off. In the general "Comments" section of the December 21, 2003 evaluation form, Adams notes that he "[c]ounselled George [sic] on above problems this hitch," which suggests that the evaluation is limited to the two-week period preceding the December 21, 2003 evaluation.

testified that Catana was rude, impolite, tactless, and lacking in social skills. Neither man testified that Catana had any history of physical violence: Adams clarified that Catana's altercations were "always verbal," and Mathis described Catana as non-threatening. Given this testimony and the fact that Caldwell had an opportunity to examine Adams – who completed the evaluation form and was in a position to elaborate on the meaning of his own comments – as well as other crew members, the evaluation would have contributed little to the evidence introduced at trial.

Moreover, any probative value of the evaluation was substantially outweighed by its potential for confusion and unfair prejudice. The introduction of the form could have shifted the jury's focus to Catana's work history following the incident, which is wholly irrelevant. Additionally, had the court admitted the evaluation under Federal Rule of Evidence 404(a)(2) as evidence of Catana's violent character, then evidence of Caldwell's violent criminal history and behavior would have been admissible as well. The consequent opening of the door to the admission of Caldwell's character evidence may well have confused the jury by taking its focus off of the incident at issue and putting it on earlier ones.

Finally, we reject Caldwell's contention that the evaluation should have been admitted as impeachment evidence. The evaluation's comments pertaining to Catana's interaction with the crew members were not inconsistent with the testimony offered at trial. Moreover, any conflict between the evaluation and the testimony regarding Catana's work performance is irrelevant.

Based on the questionable probative value of the evaluation, its cumulative nature, and the danger of confusion of the issues as well as unfair prejudice, we conclude that the district court did not abuse its discretion by refusing to admit the December 21, 2003 job performance evaluation, and any error in doing so was harmless.

## B.   Jury Instruction

We review the district court's refusal to give Caldwell's proposed justification instruction for abuse of discretion.[10]  "As a general proposition a defendant is entitled to any instruction as to any recognized defense for which there exists evidence sufficient for a reasonable jury to find in his favor."[11] Abuse of discretion is presumed where the district court denies an instruction for which there is an evidentiary foundation and which, if believed by the jury, would be legally sufficient to render the accused innocent.[12]  The district court may, however, refuse to give a requested instruction that lacks a sufficient foundation in the evidence.[13]  The evidence must be viewed in the light most favorable to the proponent in determining if there is a sufficient evidentiary foundation for a requested instruction.[14]

As illustrated by the Fifth Circuit's pattern justification instruction, to succeed on such a defense, the defendant must prove by a preponderance of the evidence that:

> (1) The defendant was under an unlawful present, imminent, and impending threat of such a nature as to induce a well-grounded fear of death or serious bodily injury to himself; and
>
> (2) The defendant had not recklessly or negligently placed himself in a situation in which it was probable that he would be forced to choose the criminal conduct; and

---

[10] United States v. Branch, 91 F.3d 699, 711 (5th Cir. 1996).

[11] Id. at 711-12 (quoting Mathews v. United States, 485 U.S. 58, 63 (1988)).

[12] Id. at 712 (quoting United States v. Rubio, 834 F.2d 442, 446 (5th Cir. 1987)).

[13] Id. (citing United States v. Tannehill, 49 F.3d 1049, 1057 (5th Cir. 1995)).

[14] United States v. Dixon, 185 F.3d 393, 402 (5th Cir. 1999) (quoting United States v. Davis, 132 F.3d 1092, 1094 (5th Cir. 1998)).

(3) The defendant had no reasonable, legal alternative to violating the law, that is, he had no reasonable opportunity to avoid the threatened harm; and

(4) A reasonable person would believe that by committing the criminal action he would directly avoid the threatened harm.[15]

Caldwell argues that the evidence introduced at trial was sufficient for a reasonable jury to find that each element was met by a preponderance of the evidence. We conclude that the district court did not abuse its discretion in finding that Caldwell failed to establish an evidentiary foundation for elements (2) and (3) of the justification defense.

It is undisputed that Caldwell, in response to Catana's insults, left his food preparation post in the galley, approached the unarmed Catana, physically assaulted him, and, when Catana struck back, stabbed him in the abdomen. Given that Caldwell relocated himself to within arms' length of Catana and then struck him, the district court fairly concluded that Caldwell recklessly or negligently placed himself in a situation in which it was more probable that he would be forced to choose the criminal conduct. We reject Caldwell's contention that a reasonable jury could have found that he needed to resort to physical violence to stand up to Catana and establish a working relationship with him, as well as to gain the respect of other crew members. Moreover, we agree with the district court that Caldwell had numerous reasonable opportunities to avoid the threatened harm: He could have (1) exercised self-restraint and ignored Catana's offensive remarks; (2) responded in kind with oral insults, as he had done in his prior exchanges with Catana; or (3) vacated the area. Instead, he availed himself of none of these alternatives. Considering that Caldwell cannot demonstrate that he pursued any of these alternatives or that they were

---

[15] Fifth Circuit Pattern Jury Instruction (Criminal) 1.36 (2001 ed.); see also United States v. Gant, 691 F.2d 1159, 1162-63 (5th Cir. 1982).

foreclosed, he was not entitled to raise the justification defense.[16]  There is no need to examine whether the other elements are met, as all are required for a justification defense.

Based on Caldwell's inability to meet the aforementioned elements, we conclude that the district court did not abuse its discretion in ruling that Caldwell failed to establish an evidentiary foundation for the jury instruction on justification for the use of deadly force.

### III. CONCLUSION

The district court did not abuse its discretion when it excluded Catana's December 21, 2003 job evaluation from being introduced into evidence or when it refused to instruct the jury on the justification defense.  Caldwell's conviction is AFFIRMED.

---

[16] See Gant, 691 F.2d at 1163-64 (quoting United States v. Bailey, 444 U.S. 394 (1980)).