# IN THE UNITED STATES COURT OF APPEALS
## FOR THE FIFTH CIRCUIT

United States Court of Appeals
Fifth Circuit

**F I L E D**

May 15, 2012

No. 11-30328

Lyle W. Cayce
Clerk

UNITED STATES OF AMERICA,

Plaintiff–Appellee

v.

JEREMY BENDER,

Defendant–Appellant

Appeal from the United States District Court
for the Western District of Louisiana
USDC No. 1:09-CR-232-1

Before KING, BARKSDALE, and PRADO, Circuit Judges.

EDWARD C. PRADO, Circuit Judge:[*]

Defendant–Appellant Jeremy Bender appeals his conviction pursuant to a guilty plea for assault with a dangerous weapon as well as the sentence imposed. For the reasons stated below, we AFFIRM. However, we REMAND the case for the limited purpose of correcting a clerical error in the judgment.

---

[*] Pursuant to 5TH CIR. R. 47.5, the court has determined that this opinion should not be published and is not precedent except under the limited circumstances set forth in 5TH CIR. R. 47.5.4.

No. 11-30328

# I. BACKGROUND

## A. Factual Background

On October 29, 2008, Bender, then an inmate at the United States Penitentiary in Pollack, Louisiana, was involved in a four-person physical altercation in a cell occupied by inmates Russell Harmon and Andrew Dickerson. Exactly what precipitated this confrontation was the subject of conflicting evidence during Bender's plea hearing and two sentencing hearings.

Bender gave the following account during his second sentencing hearing. On October 27, Bender and several other inmates told Harmon that he was not welcome among the general population of the prison because he was a child molester. Two days later, Rhyan Driggans, another inmate, told Bender that Harmon wanted to speak with him.[1]  Accordingly, Bender, accompanied by inmate Stephen Brum, went to the prison unit in which Harmon's cell was located, passed through a metal detector, and explained to an inquiring officer that they were there to speak with Harmon. The officer gave them permission to speak with Harmon for not more than ten minutes.[2]  Upon entering Harmon's cell, Bender was "taken aback" because the cell lights were turned off and Harmon was sitting on his table in the dark. Harmon "abruptly" moved toward Bender and began striking him.[3]  Bender noticed at the same time that Brum was fighting with Dickerson, who was also present in the cell.

As the fight went on, Bender "heard a loud pop at [his] feet," looked at the floor, and saw that a shank had fallen in front of him. He "instinctively grabbed

---

[1] Driggans, who testified by video, corroborated this fact.

[2] An FBI agent testified to the contrary that a guard in the prison unit had ordered Bender and Brum to leave the unit and that they had defied this order.

[3] As noted below, the FBI agent testified that Harmon and Dickerson had not done anything to provoke the fight.  He also testified, however, that his investigation was based upon a surveillance video and that it captured only what occurred outside the cell, not inside.

2

No. 11-30328

the knife before Harmon could." It appeared to Bender that Dickerson was stabbing Brum, so Bender stabbed Dickerson, and also stabbed Harmon, who had continuously been striking him. Bender threw the shank to the floor and kept fighting with Harmon. Corrections officers soon arrived and broke up the fight. The officers found a shank near the scene of the fight. Both Harmon and Dickerson suffered injuries and received outside medical care.

## B. Procedural Background

Bender was indicted for assault with a dangerous weapon, with intent to do bodily harm, and without just cause or excuse, in violation of 18 U.S.C. § 113(a)(3). Bender entered into a plea agreement with the Government.

At Bender's plea hearing, the Government presented the factual basis for the plea through the testimony of FBI agent Benjamin Walsh. Walsh testified that Bender had entered Harmon's cell, that a fight had ensued, that Harmon and Dickerson had done nothing to provoke the fight, and that a shank had been recovered from the scene. The court enumerated the elements of the offense,[4] and Bender said that he understood the elements and agreed that he had committed each element of the offense. The court accepted Bender's plea of guilty as voluntarily and knowledgeably entered.

Bender's presentence investigation report ("PSR") assigned a base offense level of 14. *See* U.S. Sentencing Guidelines Manual ("U.S.S.G.") § 2A2.2(a). Four levels were added because a dangerous weapon had been used in the assault, *see id.* at § 2A2.2(b)(2)(B), and four additional levels were added because

---

[4] The court stated:

[F]or you to be convicted of assault with a dangerous weapon, the government has to prove the following beyond a reasonable doubt: First, that you, as the defendant, assaulted [Harmon] and [Dickerson] by intentionally striking and wounding [them]. . . . Second, that you acted with the specific intent to do bodily harm to [Harmon] and [Dickerson]; Third, that you used a dangerous weapon; and Fourth, that the assault took place at USP Pollock, a location within the special jurisdiction of the United States.

of the degree of injury suffered by Harmon and Dickerson,[5] *see id.* at § 2A2.2(b)(3)(D). The PSR designated Bender a career offender, and accordingly his offense level was raised to 24. *See id.* at § 4B1.1(a) and (b)(5). Finally, three levels were subtracted for acceptance of responsibility, *see id.* at § 3E1.1(a) and (b), leaving Bender with a total offense level of 21.[6] Bender's criminal history category would have been V, *see id.* at § 4A1.1, but because he was classified as a career offender, his criminal history category was VI, *see id.* at § 4B1.1(b), resulting in an advisory guidelines range of 77 to 96 months in prison, *see id.* at ch.5, pt. A.

Bender made two objections to the PSR that are relevant to this appeal. First, Bender objected to the PSR's conclusion that more than minimal planning was involved in the assault, *see id.* at § 2A2.2(b)(1). Originally, the district court overruled this objection, stating: "I think that objection must be overruled with regard to the planning and degree of planning. There was planning in connection with this. At least that's my finding." Bender's attorney said that Bender intended to speak on the subject of planning during his allocution, to which the court responded, "Well, maybe he'll change my mind as far as the objection." When the court gave Bender the opportunity to speak "in mitigation of punishment," Bender gave his account of the incident, stating that Driggans had summoned him to speak with Harmon, that Harmon had attacked him when he entered his cell, and that he had stabbed Harmon and Dickerson with

---

[5] The original PSR also added two levels because the assault "involved more than minimal planning." *See id.* at § 2A2.2(b)(1). As discussed in more detail below, after hearing Bender's version of events at the second sentencing hearing, the district court removed this enhancement.

[6] The PSR states that Bender's total offense level is 24, but this number erroneously fails to include the three-level reduction for acceptance of responsibility. *See id.* at § 4B1.1(b) (stating that the automatic offense level applied to career offenders should be reduced accordingly with an acceptance-of-responsibility adjustment). Applying that reduction, the total offense level is 21.

No. 11-30328

the shank in self-defense. During his description of these events, Bender did not move to withdraw his guilty plea, nor did he move to withdraw it at any other point during the hearing. The district court ultimately agreed with Bender's objection and removed the enhancement for planning from the PSR.

Second, Bender objected to his designation as a career offender. Bender argued that the two prior offenses upon which his career offender status was based should be treated as one offense, in which case the enhancement would not apply. The district court concluded that the two offenses were properly considered separate offenses and that therefore the career offender enhancement was appropriate. The district court sentenced Bender within the advisory guidelines range to 77 months in prison. Bender timely appealed.

## II. DISCUSSION

### A. Factual Basis for Guilty Plea

Bender first argues that the district court erred in accepting his guilty plea because it was not supported by a factual basis. The first issue we must address is the proper standard of review for this claim of error. The Government argues that Bender never objected before the district court to the factual basis underlying his guilty plea and that therefore the standard of review is for plain error. Bender counters that he "made the district court fully aware that it was accepting his plea despite his claim that he . . . fought off his attacker purely in self-defense," and that in doing so he fully preserved the issue for appeal such that review is for clear error.

In support of his argument, Bender cites *United States v. Reasor*, 418 F.3d 466, 470 (5th Cir. 2005), where the court treated an objection to the factual basis for a plea as having been made when, although defense counsel failed to make a "formal objection," counsel nevertheless "informed the court that there might be legal defenses" to the charges for which the defendant was entering a guilty plea. The purpose of an objection is to give the district court notice of an alleged

5

No. 11-30328

defect and the opportunity to cure it. *Hartford Lloyd's Ins. Co. v. Teachworth*, 898 F.2d 1058, 1060 (5th Cir. 1990). *Reasor* is inapposite because there defense counsel did more to put the court on notice than Bender did here. Unlike defense counsel in *Reasor*, Bender did not tell the court that a legal defense may apply. Bender's allocution at sentencing was framed (1) by his attorney's statement that Bender wanted to address the issue of planning and (2) by the court's invitation for Bender to speak about mitigating factors. Bender did not direct the court's attention to the impact of his allocution on the factual basis for his previously entered guilty plea, and hence the district court was not put on notice of a possible defect. For this reason, Bender's claim will be reviewed for plain error. *See United States v. Marek*, 238 F.3d 310, 315 (5th Cir. 2001) (en banc).

To succeed on plain error review, Bender must establish that there was (1) an error (2) that was clear or obvious and (3) that affected his substantial rights, *United States v. Delgado*, 672 F.3d 320, 329 (5th Cir. 2012) (en banc), which requires Bender to show that there is a "reasonable probability that, but for the error, he would not have entered the plea," *United States v. Dominguez Benitez*, 542 U.S. 74, 83 (2004). If Bender makes this showing, we then have discretion to remedy the error, which discretion should be exercised only if the error "seriously affects the fairness, integrity or public reputation of judicial proceedings." *Delgado*, 672 F.3d at 329 (internal quotation marks omitted).

"Before entering judgment on a guilty plea, the court must determine that there is a factual basis for the plea." Fed. R. Crim. P. 11(b)(3). "The facts supporting the plea must appear in the record and must be sufficiently specific to allow the court to determine if the defendant's conduct was within the ambit of that defined as criminal." *United States v. Cano-Guel*, 167 F.3d 900, 906 (5th Cir. 1999) (internal quotation marks omitted). "[E]vidence adduced after the acceptance of a guilty plea, but before or at sentencing, may provide the factual

No. 11-30328

basis of the plea . . . ." *United States v. Dyer*, 136 F.3d 417, 424 n.13 (5th Cir. 1998). To determine whether the factual basis is sufficient, the district court must compare "(1) the conduct to which the defendant admits with (2) the elements of the offense charged in the indictment" to ensure that the defendant understands the nature of the charge and that his admitted conduct falls within the charge. *Marek*, 238 F.3d at 315. The elements of the offense for which Bender admitted guilt are (1) an assault (2) with a dangerous weapon (3) with the intent to do bodily harm. 18 U.S.C. § 113(a)(3); *United States v. Estrada-Fernandez*, 150 F.3d 491, 494 (5th Cir. 1998).

Between the testimony of Walsh at the plea hearing and Bender at the sentencing hearing, facts were adduced to support each element of the charged offense. The testimony showed that Bender had stabbed Harmon and Dickerson with a shank with the intention of harming them. Nevertheless, Bender argues that the version of events he related during his allocution showed that there was no factual basis for his guilty plea because he acted in self-defense.

Self-defense is a form of the affirmative defense of justification. *United States v. Posada-Rios*, 158 F.3d 832, 873 (5th Cir. 1998). The elements of this defense are as follows: (1) the defendant "was under an unlawful and present, imminent, and impending threat of such a nature as to induce a well-grounded apprehension of death or serious bodily injury"; (2) the defendant "had not recklessly or negligently placed himself in a situation in which it was probable that he would be forced to choose the criminal conduct"; (3) the defendant "had no reasonable legal alternative to violating the law[, that is, no chance] to refuse to do the criminal act and also to avoid the threatened harm"; and (4) a "direct causal relationship may be reasonably anticipated between the criminal action

7

No. 11-30328

taken and the avoidance of the threatened harm." *United States v. Wyly*, 193 F.3d 289, 301 (5th Cir. 1999).[7]

Bender cannot succeed under plain error review because he cannot show that there is a reasonable probability that, but for any error, he would not have pleaded guilty. Bender argues in his reply brief that "[h]ad he understood prior to this appeal that he was not guilty of the charged crime, he would not have pleaded guilty." However, Bender's testimony directly contradicts this assertion. During the sentencing hearing, Bender stated: "I pled guilty . . . because of the circumstances that were involved in this case, that I didn't want to take my chance of going to trial and trying to have a self-defense case or something and then be convicted." This statement reveals Bender's awareness of self-defense and his rejection of that defense prior to pleading guilty. *United States v. Gallegos-Velazquez*, 414 F. App'x 654 (5th Cir. 2011) (per curiam) (unpublished), presented a similar situation. There, the defendant pleaded guilty to assault and later, in a sentencing memorandum, stated that he had acted in self-defense. *Id.* at *1. On plain error review, we concluded that the defendant could not show that any error in accepting his guilty plea affected his substantial rights because the defendant said that he had considered and rejected pursuing self-defense prior to pleading guilty. *Id.* at *2. For this reason, Bender has not shown that the district court plainly erred in accepting his guilty plea.[8]

---

[7] *Wyly* states that these are the elements of the duress defense, but this court has used the same elements to define the general defense of justification, *United States v. Caldwell*, 257 F. App'x 764, 769 (5th Cir. 2007) (per curiam) (unpublished), and self-defense, *United States v. McGee*, 29 F.3d 625, at *6 (5th Cir. 1994) (unpublished). The elements also closely track section 1.36 of the Fifth Circuit Pattern Jury Instructions, titled "Justification, Duress, or Coercion." Fifth Circuit Pattern Jury Instructions: Criminal § 1.36 (West 2001).

[8] Even if Bender were able to show that his substantial rights were affected, he would still not succeed under plain error review because he cannot show that there was a clear and obvious error—*United States v. Abreo*, 30 F.3d 29 (5th Cir. 1994), supports the conclusion that the district court did not err in accepting Bender's guilty plea. In that case, the court asked Abreo during his plea hearing whether anyone had tried to force him to plead guilty, to which

## B. Career Offender Designation

Bender next argues that two juvenile offenses that were used to classify him as a career offender should not have been counted separately because the two offenses were originally contained in the same charging instrument. While the sentencing guidelines are only advisory under *United States v. Booker*, 543 U.S. 220 (2005), the district court must follow the proper procedures in calculating the advisory guidelines range, and procedural error warrants reversal regardless of the substantive reasonableness of the resulting sentence. *United States v. Bonilla*, 524 F.3d 647, 655–56 (5th Cir. 2008). "We review a district court's interpretation and application of the sentencing guidelines de novo and its factual findings for clear error." *United States v. Solis*, 675 F.3d 795, 797 (5th Cir. 2012).

A defendant is designated a career offender if: (1) he was at least eighteen years old at the time he committed the charged offense; (2) the charged offense is a crime of violence or a controlled substance offense; and (3) the defendant has at least two prior felony convictions that were either crimes of violence or controlled substance offenses. U.S.S.G. § 4B1.1(a). Prior sentences are counted as separate offenses if an intervening arrest separated the offenses. *Id.* at § 4A1.2(a)(2). If there was no intervening arrest, prior sentences are counted separately unless the sentences resulted from offenses contained within the

---

Abreo said no. *Id.* at 31. Later, at the sentencing hearing, Abreo told the court that his guilty plea was motivated by threats from his co-defendant. *Id.* at 30–31. Abreo did not move to withdraw his plea or object to the voluntariness of his plea; rather, his testimony about the threats "was offered in an effort to obtain leniency from the district court in sentencing." *Id.* at 31 n.1. Abreo argued on appeal that the court had erred by failing to make a more searching inquiry into the voluntariness of his plea after hearing him testify about having been threatened. *Id.* at 30–31. We declined to "impose a duty on the district court to reconsider sua sponte the voluntariness of a plea at the sentencing hearing when the defendant has made no objection." *Id.* at 31 n.1. Similarly, here, where the first mention of facts relating to self-defense occurred at the sentencing hearing and where no objection to the factual basis for the plea was made, the district court did not err by failing to sua sponte inquire into the factual basis for the plea.

same charging instrument or the sentences were imposed on the same day. *Id.* In Bender's case, there was no intervening arrest and the sentences were imposed on different dates. Therefore, whether these sentences are to be treated separately depends on whether they resulted from offenses contained within the same charging instrument.

The two prior offenses at issue were committed by Bender when he was a juvenile and were originally handled by Maine's juvenile justice system. Bender states that the two prior offenses "were committed as part of a single crime spree that crossed county lines." He emphasizes that the offenses were originally charged together in a single charging instrument by the Maine Youth Center. However, Bender was ultimately charged as an adult, and at that time, the charges appeared in separate charging instruments for the two jurisdictions involved and were prosecuted in separate courts.

Bender argues that because the two offenses were originally contained within the same charging instrument, they should be treated as one offense and thus Bender should not be designated a career offender.

The Government first responds by pointing out that Bender has not produced any evidence that the two offenses were originally charged in the same instrument.[9] The Government also notes that the PSR states that the juvenile

---

[9] Bender argues in his Reply Brief that although the juvenile charging instrument containing both offenses is not in the record, the district court made a finding of fact that there was only one juvenile charging instrument. Bender is incorrect. The following statement by the court is the only relevant portion of the page of the record that he cites in support of his argument:

> I have to then go on to the issue of the career criminal calculations. Looking at it and following the law, it does appear that you qualify, that it fits. *And I realize it all started out in a juvenile proceeding because the way the State of Maine did that*; but in fact, they were separate offenses on separate days and separate jurisdictions, and once they were sent to the adult forum, the two different jurisdictions, those are separate offenses for purposes of that career criminal statute and the calculation.

offenses were originally filed under docket numbers 95JV668 and 675 and 95JV678 and 682, and argues that this is evidence that the offenses were actually charged in separate instruments even in the juvenile system. Finally, the Government argues that the sentences "were linked to those charging documents in adult court, not to the charging documents filed in juvenile court."

We addressed a similar situation in *United States v. Kennedy*, No. 10-50740, 2011 WL 6413872 (5th Cir. Dec. 22, 2011) (per curiam) (unpublished). There, Kennedy argued that his counsel had been ineffective for failing to object to the use of two prior felony convictions to classify Kennedy as a career offender. *Id.* at *1. The two prior offenses had originally been charged in the same indictment, but one of the charges was dismissed and subsequently charged in a separate indictment. *Id.* at *2. Kennedy argued that because the offenses were originally charged in the same indictment, they should have been counted as a single offense. *Id.* Noting that Kennedy failed to provide any legal authority for this argument, we held that his counsel was not ineffective for failing to object. *Id.*

In *United States v. Rayford*, 434 F. App'x 721, 723–24 (10th Cir. 2011) (unpublished), Rayford argued that the district court had erred in counting his prior offenses separately because the two convictions shared the same docket number; also, the resulting sentences were run concurrently. The Tenth Circuit disagreed, noting that the offenses had separate case numbers, which it concluded raised the inference that the offenses were charged separately. *Id.* at 724. In *United States v. Herrington*, 350 F. App'x 363, 370 (11th Cir. 2009) (per curiam) (unpublished), the Eleventh Circuit concluded that Herrington's prior

---

The emphasized portion of this quotation falls short of making a factual finding that the offenses were originally contained within the same charging document in the juvenile justice system.

offenses were not contained in the same charging instrument because they were prosecuted in separate jurisdictions.

The circumstances here lead to the conclusion that Bender's prior offenses were properly treated separately. There is no record evidence that the offenses were originally contained in the same charging instrument, and indeed the docket numbers of the cases is some evidence that they were charged separately even in juvenile court. In addition, the offenses were prosecuted under separate case numbers in separate jurisdictions. For all of these reasons, the district court did not err in treating Bender's prior offenses separately and in designating Bender a career offender.

## C. Clerical Error in Judgment

Finally, Bender requests that we remand the case for correction of a clerical error in the judgment. Bender notes that while the judgment correctly identifies 18 U.S.C. § 113(a)(3) as the statute to which he pled guilty, the nature of the offense is incorrectly described as "Assault with Intent to Murder" rather than "Assault with a Dangerous Weapon." The Government agrees with Bender that the judgment is incorrect in this respect. We therefore remand the case to the district court for the limited purpose of correcting this error in the judgment pursuant to Federal Rule of Criminal Procedure 36.

## III. CONCLUSION

We conclude that the district court did not plainly err in finding a factual basis for Bender's guilty plea and also did not err in treating Bender's two prior offenses separately for the purpose of designating him a career offender. Therefore, the judgment of the district court is AFFIRMED. We REMAND the case for the limited purpose of correcting the clerical error in the judgment.